**In re Petition regarding 2010 GUBERNATORIAL ELECTION.**

**No. A10–2022.**

Supreme Court of Minnesota.

Dec. 7, 2010.

Sam Hanson, Diane B. Bratvold, Neal T. Buethe, Briggs and Morgan, P.A., and Tony P. Trimble, Matthew W. Haapoja, Trimble & Associates, Ltd., Minneapolis, MN, for petitioner Tom Emmer.

Susan Gaertner, Ramsey County Attorney, Darwin J. Lookingbill, Assistant Ramsey County Attorney, St. Paul, MN, for respondent Ramsey County.

Robert M.A. Johnson, Anoka County Attorney, Thomas G. Haluska, Assistant Anoka County Attorney, Anoka, MN, for respondent Anoka County.

Marc E. Elias, Kevin J. Hamilton, Perkins Coie LLP, Washington, D.C.; and Charles N. Nauen, William A. Gengler, Lockridge Grindal Nauen PLLP, David L. Lillehaug, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent Mark Dayton.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, MN, for respondent Secretary of State Mark Ritchie.

Michael O. Freeman, Hennepin County Attorney, Daniel P. Rogan, Patrick S. Diamond, Assistant Hennepin County Attorneys, Minneapolis, MN, for respondent Hennepin County Auditor Jill Alverson.

## OPINION

PER CURIAM.

On Wednesday, November 17, 2010, Tom Emmer, the Republican Party's candidate for Governor of Minnesota, filed a petition under Minn.Stat. § 204B.44 (2008), alleging that the Minnesota State Canvassing Board was about to commit an error in certifying the correctness of the results of the November 2, 2010, general election. Petitioner alleged that local election officials had failed to properly determine the number of ballots to be counted on election night and that, as a result, there may have been more ballots counted than there were voters who cast ballots. Petitioner asked the court to order the State Canvassing Board, prior to its certification of the 2010 election results for Governor of the State of Minnesota, to conduct a statewide determination of the number of persons voting on Election Day by counting signatures on the precinct polling rosters, and not voter's receipts. Petitioner contends that the number of signatures must be used to determine the proper number of ballots to count in accordance with Minn.Stat. § 204C.20, subd. 1 (2008). After expedited briefing, we heard oral argument on November 22, 2010.[1] We filed an order on November 22, 2010, denying the petition, with this opinion to follow.

This case involves the statutes that govern two processes that occur at the polling place on Election Day: the process by which voters obtain a ballot on which to

---

1. Responses in opposition to the petition were filed by Ramsey County, Anoka County, Mark Dayton, Secretary of State Mark Ritchie, and Hennepin County Auditor Jill Alverson.

vote, and the process of determining the correct number of ballots to count after the polls have closed. The first process is currently prescribed in Minn.Stat. § 204C.10 (2008). Under section 204C.10(a), an individual desiring to vote is required to "sign a polling place roster." After the individual signs the roster, an election judge gives the voter a "voter's receipt." Minn.Stat. § 204C.10(c). The voter gives the receipt to the election judge in charge of ballots and receives a ballot in exchange. *Id.*

The second process is prescribed in Minn.Stat. § 204C.20, subd. 1. After the polls close on Election Day, that statute requires election judges in each precinct to determine the number of ballots to be counted based on either "the number of signed voter's certificates" or "the number of names entered in the election register." *Id.*[2] The statute provides:

> The election judges shall determine the number of ballots to be counted by adding the number of return envelopes from accepted absentee ballots to *the number of signed voter's certificates,* or to *the number of names entered in the election register.* The election judges shall then remove all the ballots from the box. Without considering how the ballots are marked, the election judges shall ascertain that each ballot is separate and shall count them to determine whether the number of ballots in the box corresponds with the number of ballots to be counted.

Minn.Stat. § 204C.20, subd. 1 (emphasis added). If there are more ballots in the ballot box than the number of ballots to be counted, subdivision 2 of section 204C.20 prescribes additional steps that election officials are to take. *See* Minn.Stat. § 204C.20, subd. 2 (2008). If, "after following these steps," there remains "an excess of properly marked ballots," one election judge is to remove ballots from the ballot box "without looking" until the number of ballots remaining in the ballot box agrees with the number of ballots to be counted. *Id.*[3]

Petitioner asserts that local election officials did not perform the second process, determining the correct number of ballots

---

**2.** The statute also includes the number of return envelopes from accepted absentee ballots in determining the number of ballots to be counted. *See* Minn.Stat. § 204C.20, subd. 1. Because absentee ballots are no longer counted at the precinct level, they are not at issue in this case. *See* Act of March 24, 2010, ch. 194, § 9, 2010 Minn. Laws 120, 124–27 (amending Minn.Stat. § 203B.121 (2008) to require absentee ballots to be opened and counted by the municipal or county ballot board).

**3.** Minnesota Statutes § 206.86 (2008) establishes a procedure similar to that set out in section 204C.20, subdivision 1, for use in precincts where an electronic voting system is used, as in Hennepin and Ramsey Counties. Section 206.86, subdivision 1, provides that in precincts with electronic voting systems, the election judges shall "open the ballot box and count the number of ballot cards or envelopes containing ballot cards that have been cast to determine that the number of ballot cards does not exceed the number of voters shown on the election register or registration file." The statute further provides that if there is an excess number of ballots, the judges must transport the ballots in a sealed container to the county auditor or municipal clerk, who "shall process the ballots in the same manner as paper ballots are processed in section 204C.20, subdivision 2." *Id.* Like subdivision 1 of section 204C.20, subdivision 1 of section 206.86 provides a process for determining whether the number of ballots in the ballot box is consistent with the information recorded as voters obtain their ballots throughout the election day. But in contrast to section 204C.20, section 206.86 specifies comparison to the "number of voters shown on the election register or registration file," instead of to the "number of signed voter's certificates" or "the number of names entered in the election register."

to be counted, in accordance with Minn. Stat. § 204C.20, subd. 1. Specifically, petitioner argues that section 204C.20, subdivision 1, requires election officials to count voter signatures on polling place rosters to determine the number of ballots to be counted. He asserts that at the election on November 2, local election officials counted voter's receipts instead of voter signatures and, because voter's receipts are not signed by the voter, determining the number of ballots to be counted based on the number of voter's receipts does not comply with section 204C.20. Petitioner further alleges that because the number of ballots to be counted was not properly determined, any "excess" ballots were not removed from the ballot box before the votes were recorded, as required by Minn. Stat. § 204C.20, subd. 2.[4]

Petitioner's argument is premised on section 204C.20, subdivision 1. He contends that the statute clearly requires officials to count voter signatures because the statute refers to the number of "signed" voter's certificates and because, he asserts, the election register—specified in subdivision 1 as the other means of determining the number of ballots to be counted—is the predecessor of the present day signed polling place roster.

■ Petitioner's claim presents an issue of statutory interpretation—that is, whether either section 204C.20 or section 206.86, or both, allows only voter signatures on the polling place roster to be considered in

determining the number of ballots to be counted. The object of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn.Stat. § 645.16 (2008). Our starting point is the language of the statutes. *E.g.*, *Middle–Snake–Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 840 (Minn. 2010). If the language of the statutes is unambiguous, we do not look further to determine their meaning. *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 8 (Minn.2005) ("We have repeatedly held that we must give effect to the plain meaning of statutory text when it is clear and unambiguous."). If the language is ambiguous, the Legislature has provided direction as to how its intent "may be ascertained." Minn.Stat. § 645.16. The first question then is whether the language of the statutes is ambiguous.

### A.

■ Petitioner argues that sections 204C.20 and 206.86 are not ambiguous, and that the plain language of the statutes unambiguously requires determination of the number of ballots to be counted based only on the number of voter signatures on polling place rosters. He further argues that the plain language of the statutes precludes local election officials from using voter's receipts to determine the number of ballots to be counted.

---

4. Petitioner's argument that excess ballots were not removed as required by statute is based on his assertion that the number of ballots to be counted was not properly determined because election officials relied on voter's receipts. Because we decide that it was not improper to rely on voter's receipts to determine the number of ballots to be counted, petitioner's contention regarding excess ballots fails. In responses filed to the petition, certain local election officials appear to have conceded that they are not removing excess ballots, although they do not concede a statutory violation. *See* Minn.Stat. § 204C.20, subd. 2 ("If there is still an excess of properly marked ballots, the election judges shall replace them in the box, and one election judge, without looking, shall withdraw from the box a number of ballots equal to the excess."). The validity of this practice was not raised in the petition and has not been fully presented to this court. Therefore, this issue is not before us, and we do not discuss it further.

The plain language of the statutes does not support petitioner's arguments. Neither section 204C.20, subdivision 1, nor section 206.86, subdivision 1, includes the terms "polling place rosters" or "voter's receipts"—the terms used in section 204C.10 to describe the current process by which a voter obtains a ballot. We cannot, therefore, conclude that the plain language of the statutes at issue either requires counting signatures on the polling place rosters or prohibits counting voter's receipts.

But, petitioner argues, the reference to "signed" voter's certificates in section 204C.20, subdivision 1, indicates the Legislature's intent that only documents signed by the voter may be considered in determining the number of ballots to be counted. The plain language of section 204C.20, subdivision 1, however, is not as limited as petitioner argues. In addition to referencing the number of signed voter's certificates, the statute also provides for counting "the number of names entered in the election register." Minn.Stat. § 204C.20, subd. 1. Likewise, section 206.86, subdivision 1, instructs election judges to compare the number of ballots to "the number of voters shown on the election register." Although it is no longer in use, the "election register," when it was used, was not signed by the voter. *See, e.g.,* Minn.Stat. § 204A.295 (1978).

An examination of the process used when the election register system was in place demonstrates that that system did not involve voter signatures. The election register was a document used in precincts where there was no permanent voter registration system. *Id.,* subd. 1. In the absence of permanent voter registration, a person who wished to vote in a particular election was required to first satisfy an election board that he was eligible to vote in the precinct. *Id.* If the applicant was eligible to vote at the precinct, an election judge wrote the voter's name, residence, and address of most recent prior registration in the election register and then handed the voter a ballot. *Id.,* subd. 4. Beginning in 1978, an election register was therefore a list, prepared by election judges on election day, of the voters who had qualified to vote and received ballots in that precinct for that particular election. *See id.* This list did not contain signatures of voters. Because sections 204C.20 and 206.86, in their plain terms, allow election officials to count something other than signatures, specifically, names on the election register, petitioner's plain-language argument fails.

 That the plain language of the statutes does not require that election officials count only voter signatures does not fully resolve the question presented here. This is so because the express language of the statutes also does not provide, as petitioner notes, for local election officials to count voter's receipts. As noted above, the express language of section 204C.20 provides for counting either the number of "signed voter's certificates" or the "number of names entered in the election register." The express language of section 206.86 similarly directs election judges to count the ballot cards to determine that their number does not exceed the number of voters shown on the "election register" or "registration file." But "voter's certificates," "election registers," and "registration files" are documents no longer used at the polling place in Minnesota elections. The statutes that previously prescribed the use of those documents in the processes by which voters obtained ballots at the polls have been repealed or amended, and the current statute, section 204C.10, establishes a process that instead uses polling place rosters and voter's receipts. Accordingly, neither section 204C.20, subdivision

1, nor section 206.86, subdivision 1, can be implemented in accordance with its express terms. A statute that cannot be complied with because it refers to nonexistent documents is, by its very terms, ambiguous. *See* Minn.Stat. § 645.17(1) (2008) (stating that "the legislature does not intend a result that is ... impossible of execution").[5]

B.

█ We must, therefore, attempt to determine how the Legislature intends election officials to determine the number of ballots to be counted in light of the obsolete, and therefore ambiguous, language of sections 204C.20 and 206.86. In determining the intent of the Legislature, "[w]hen the words of a law are not explicit," the Legislature has stated that we may consider, among other things, "the occasion and necessity for the law," "the object to be attained," "the former law, if any, including other laws upon the same or similar subjects," and "administrative interpretations of the statute." Minn.Stat. § 645.16(1), (4), (5), (8).

With respect to "the occasion and necessity for the law" and "the object to be attained" by the law, the operative provisions of the statutes direct local election officials to determine the proper number of ballots to be counted. *See* Minn.Stat. §§ 204C.20, subds. 1, 2, and 206.86, subd. 1. Because the law requires that the determination be made before the ballots are counted, the legislative intent appears to be to design a process that would guard against more ballots being counted than eligible voters voting. Petitioner has not shown how counting voter's receipts, which are given only to voters after they have signed the polling place roster and which constitute "proof of the voter's right to vote," Minn.Stat. § 204C.10(c), is inconsistent with this legislative intent.

---

5. Our conclusion that the statutes contain obsolete terms raises the question whether those statutes retain any viable meaning. By failing to change the terminology of sections 204C.20 and 206.86 to keep pace with changes in the processes and terminology of related statutes, the Legislature could have intended to render section 204C.20, subdivision 1, and section 206.86, subdivision 1, ineffective, in essence repealing them by implication. But repeal of statutes by implication is not favored. *Fingerhut v. Comm'r of Revenue*, 278 N.W.2d 528, 531 (Minn.1979). And, in ascertaining legislative intent, we are to presume that the Legislature intends the entire statute to be effective. Minn.Stat. § 645.17(2) (2008).

Moreover, other provisions of our election laws continue to refer to and rely on the process of determining the number of ballots to be counted, indicating legislative intent that the process remain effective. For example, section 206.86, subdivision 1, incorporates the process for removal of excess ballots created in section 204C.20, subdivision 2, which is dependent on determination of the correct number of ballots to be counted. *See* Minn.Stat. § 206.86, subd. 1 (requiring the county auditor or municipal clerk to process excess ballots "in the same manner as paper ballots are processed in section 204C.20, subdivision 2"). Notably, section 206.86, subdivision 1, which includes this cross-reference and also specifies the process to be used in precincts in which an electronic voting system is used, has been reenacted, with minor amendments, as recently as 1999. Act of May 7, 1999, ch. 132, § 38, 1999 Minn. Laws 530, 542 (amending Minn.Stat. § 206.86, subd. 1). Even more recently, during the 2010 legislative session, the Legislature indicated its intent that precincts continue to determine the number of ballots to be counted, by amending Minn.Stat. § 204C.24, subd. 1 (2008), to add the requirement that the report of the number of individuals who voted at the election "equal the total number of ballots cast in the precinct, *as required by sections 204C.20 and 206.86, subdivision 1.*" Act of April 1, 2010, ch. 201, § 40, 2010 Minn. Laws 172, 190 (emphasis added). Where the Legislature has recently incorporated a reference to a statute, we cannot conclude that the Legislature intended the referenced statute to have been repealed or rendered ineffective. We decline to deem Minn.Stat. §§ 204C.20 and 206.86 repealed by implication.

When we turn to the former law on this and related subjects, it is even more clear that petitioner's statutory argument that only voter signatures can be counted fails because the information that Minnesota law has historically directed local election officials to use in determining the proper number of ballots to be counted was not signed by the voter. A form of the un-signed "election register" was used in elections from at least 1939 [6] until it was eliminated in 1984,[7] and was specifically identified in the statutes as a basis for de-termining the proper ballot numbers be-ginning in 1939.[8] Although signed voter's certificates were used in elections starting in at least 1939,[9] the statutory provisions providing for determining the number of ballots to be counted did not mention vot-er's certificates until 1977.[10] Instead, from 1939 until 1977, the statutory prede-cessors of section 204C.20, subdivision 1, provided for determination of the number of ballots to be counted based on either the election register or the "registration file." *See, e.g.,* Minn.Stat. § 601–6(10)c (Supp.1940) (election register); Minn.Stat. § 204A.41, subd. 1 (1976) (election register or registration file). During those years, the registration file was a collection of duplicate voter registration cards, *see, e.g.,*

Minn.Stat. § 201.121, subd. 1 (1976), on which the election judge recorded "the fact of voting" before handing the voter a ballot, *see, e.g.,* Minn.Stat. § 204A.29, subd. 2 (1976). Like the election register, the registration file was not signed by the voter at the polls.[11]

Rather than indicating intent to rely exclusively on voter signatures, relevant former law demonstrates legislative intent to permit reliance, as well, on documenta-tion created by election judges of the vot-ers' eligibility to vote and receipt of a ballot. The election laws for many years permitted reliance on either the election register or the registration file.

As described above, in precincts without permanent voter registration, after the voter had demonstrated his eligibility to vote, an election judge entered the voter's name on the election register. The voter's name on the register served both as the proof of eligibility to vote and the record that the voter had voted.

Precincts with a permanent voter regis-tration system used a registration file to document eligibility to vote. The registra-tion file was composed of a registration card for each voter registered in the pre-cinct. In order to vote, the voter was

---

**6.** Act of April 21, 1939, ch. 345, pt. 2, ch. 5, § 4, 1939 Minn. Laws 530, 546 (enacting Minn.Stat. § 601–2(5)c (Supp.1940)).

**7.** Act of April 25, 1984, ch. 560, § 26, 1984 Minn. Laws 1024, 1033 (repealing Minn.Stat. § 204C.11).

**8.** Act of April 21, 1939, ch. 345, pt. 6, ch. 10, § 4, 1939 Minn. Laws 530, 609–10 (enacting Minn.Stat. § 601–2(2)k (Supp.1940)).

**9.** Act of April 21, 1939, ch. 345, pt. 6, ch. 8, § 12, 1939 Minn. Laws 530, 600 (enacting Minn.Stat. § 601–2(2)k (Supp.1940)).

**10.** Act of May 18, 1977, ch. 91, § 4, 1977 Minn. Laws 164, 165–66 (amending Minn. Stat. § 204A.41, subd. 1).

**11.** In 1981, the Legislature provided the op-tion for local election jurisdictions to adopt an electronic voter registration system in place of the card system. Minn.Stat. § 201.071, subd. 5 (1982). For jurisdictions that opted for an electronic system, the statutes provided for voters to sign a duplicate "registration file" at the polling place and in turn, to receive a "voter's receipt," which served as proof of the right to vote and was exchanged for a ballot. Minn.Stat. § 204C.10, subd. 2 (1982). Never-theless, section 204C.20, subdivision 1, was not amended to recognize this new procedure or terminology, and made no reference to either the registration file or voter's receipts at that time.

required to sign a voter's certificate. *E.g.*, Minn.Stat. § 204A.29, subd. 1 (1978). The election judge then compared the signature on the certificate to the signature on the voter's registration card. *E.g.*, *id.*, subd. 2 (1978). If the signatures matched, the election judge initialed the certificate, returned it to the voter, and recorded the "fact of voting" on the back of the voter's registration card. *Id.* The voter exchanged the certificate, which served as "proof of his right to vote," for a ballot. *Id.* Until 1977, the predecessor of section 204C.20, subdivision 1, did not provide for, much less require, reliance on the signed voter's certificates. Instead, the statute provided for reliance on the registration file, Minn.Stat. § 204A.41, subd. 1 (1976), which meant counting the number of voter registration cards in the registration file on which election judges had recorded the fact of voting.

In 1977, the Legislature amended the predecessor of section 204C.20, subdivision 1, by eliminating use of the registration file in determining the number of ballots to be counted and adding the option to use the "number of signed voter's certificates," while retaining the existing language that allowed reference to the election register. Act of May 18, 1977, ch. 91, § 4, 1977 Minn. Laws 164, 165–66 (amending Minn. Stat. § 204A.41, subd. 1). As a result of this amendment, in precincts with permanent registration, election judges could count slips of paper—the voter's certificates—that were exchanged for a ballot "as proof of his right to vote," Minn.Stat. § 204A.29, subd. 2 (1978), instead of counting individual voter registration cards that had been marked to indicate "the fact of voting," as was previously done.

In 1990, as part of the statutory changes that required the Secretary of State to implement a computerized statewide voter registration system, the Legislature dis-

continued use of the registration card system and the associated voter's certificates. *See* Act of May 3, 1990, ch. 585, §§ 16, 27, 1990 Minn. Laws 2208, 2215–16, 2221 (amending Minn.Stat. §§ 201.221 and 204C.10). The new statutory process, applicable in all precincts and still in effect today, requires prospective voters to sign a "polling place roster" that contains the names of voters registered in the precinct. Minn.Stat. § 204C.10 (2008). Once the election judge determines that the voter is eligible to vote, the voter is given a receipt, which serves as proof of the right to vote and is exchanged for a ballot. *Id.* In other words, the voter's receipt is the evidence provided by the election judge that the voter is qualified to vote.

Petitioner focuses his argument on the fact that, when in use, voter's certificates had to be signed. But it is significant that, when it was in use, the voter's certificate served two functions. It served as a repository of the voter's signature, as emphasized by petitioner. In addition, when returned to the voter by an election judge, the voter's certificate provided proof of the right to vote to the election judge in charge of distributing ballots. *E.g.*, Minn. Stat. § 204A.29, subd. 2 (1978). Under the current procedure, the polling place roster serves the first function, as a repository of the voter's signature. It is the voter's receipt that now serves the second function: when given to the voter by an election judge, the receipt serves as proof of the right to vote that can be exchanged for a ballot. Minn.Stat. § 204C.10 (2008). In this respect, the voter's receipt serves the same legislative purpose that the voter's certificate previously served.

In summary, Minnesota's election laws have not relied exclusively on documents signed by voters to determine the number of ballots to be counted in the election. Instead, the Legislature has consistently

permitted reference to the election judge's indicator of voter eligibility and right to receive a ballot as a basis for determining the number of ballots to be counted. In addition, the voter's receipt specifically serves one of the two purposes previously served by the signed voter's certificate, namely, proof of the right to vote. In the face of this evidence of legislative intent, and lacking any direct statutory language to the contrary, we conclude that the Legislature intends the processes prescribed by Minn.Stat. § 204C.20, subd. 1, and Minn.Stat. § 206.86, subd. 1, to be based on either the number of signatures on polling place rosters, or on the number of voter's receipts.

The final factor the Legislature has authorized us to consider in ascertaining legislative intent is "legislative and administrative interpretations of the statute." Minn.Stat. § 645.16(8). With respect to this factor, respondents Secretary of State and county election officials rely on an administrative rule promulgated by the Secretary of State as authority for the option to use either the number of voter's receipts or the number of names signed on the polling place roster in determining the number of ballots to be counted. The rule, Minn. R. 8200.9300, subp. 10 (2009), provides:

> The election judges shall determine the number of ballots to be counted by adding the number of return envelopes from accepted absentee ballots to the number of voter's receipts issued pursuant to Minnesota Statutes, section 204C.10, subdivision 2, or to the number of names signed on the polling place roster. The election jurisdiction may require that the election judges number or initial each voter's receipt as it is issued.

A version of this rule authorizing use of voter's receipts in this process has been in place since 1982. See 1 MCAR § 2.1005(I) (1982) (providing that election judges could determine the number of ballots to be counted using "the number of voter's receipts issued pursuant to Minn.Stat. [§ ] 204C.10, subd. 2 or ... the number of names signed on the precinct election lists").

Petitioner argues that the rule is invalid because it is beyond the rulemaking authority of the Secretary of State and because in allowing the use of voter's receipts it is contrary to the express language of section 204C.20, subd. 1. Because we find that counting voter's receipts is consistent with legislative intent, petitioner's second argument, that the rule is contrary to the express language of the statute, necessarily fails.[12] And while we do not reach the parties' arguments concerning the scope of the Secretary of State's rulemaking authority,[13] the longstanding administrative interpretation of the statutes, embodied in the rule, allowing reliance on voter's receipts in determining the number of ballots to be counted, and the use of that interpretation in practice, supports our conclusion that the Legislature did not intend to require exclusive reliance on the number of signatures on the polling place roster in determining the number of ballots to be counted on election night. See R.S. v. State, 459 N.W.2d 680, 694 (Minn.1990) ("When the legislative intent behind a statute is not clear, we have secondarily relied on an agency's contem-

12. Petitioner challenges the wisdom of a policy that permits reliance on unsigned voter's receipts to determine the number of ballots to be counted, but that policy discussion must be directed to the Legislature.

13. Our conclusion on statutory interpretation also makes it unnecessary for us to address the other procedural and substantive arguments raised by respondents.

poraneous interpretation of the statute in question."). Moreover, the Legislature has twice reenacted section 206.86, subdivision 1, to make other minor changes without updating its language to either reflect the changes in election procedures discussed in this opinion or to negate the Secretary of State's rule. *See* Act of May 13, 1997, ch. 147, § 68, 1997 Minn. Laws 913, 936–37; Act of May 7, 1999, ch. 132, § 38, 1999 Minn. Laws 530, 542.

Our review of the purpose of the statutes, relevant prior legislation, and the longstanding administrative interpretation establishes that the Legislature intends the processes prescribed by Minn.Stat. § 204C.20, subd. 1, and Minn.Stat. § 206.86, subd. 1, to be based on either the number of signatures on polling place rosters, or on the number of voter's receipts. Because we conclude that the practice petitioner claims is in error, that is, determining the number of ballots to be counted on election night by counting the number of voter's receipts, is permissible under both Minn.Stat. § 204C.20 and Minn.Stat. § 206.86, we hold that petitioner has not demonstrated any "wrongful act, omission, or error" that provides a basis for relief under Minn.Stat. § 204B.44. The petition must therefore be denied.

Petition denied.

ANDERSON, PAUL H., and STRAS, JJ., took no part in the consideration or decision of this matter.