KSTP–TV, et al., Appellants,

v.

RAMSEY COUNTY, Respondent.

No. A10–0395.

Supreme Court of Minnesota.

Nov. 16, 2011.

Mark R. Anfinson, Minneapolis, Minnesota, for appellants.

John J. Choi, Ramsey County Attorney, Kevin M. Lindsey, Assistant County Attorney, St. Paul, Minnesota, for respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

This appeal asks us to decide how sealed absentee ballots that were rejected and never counted during the 2008 general election are classified under the Minnesota Government Data Practices Act (MGDPA), Minn.Stat. ch. 13 (2010). Appellant television stations KSTP–TV, KSTC–TV, WDIO–TV, KAAL–TV, and KSAX–TV, alleging that the ballots are public government data under the MGDPA, brought an action under the MGDPA seeking access to the ballots. The Ramsey County District Court granted summary judgment to the stations. The court of appeals reversed, concluding that Minn.Stat. § 13.37, subd. 2, unambiguously provides that sealed absentee ballots are nonpublic or private data under the MGDPA. The court of appeals declined to decide whether the ballots are data on individuals because the data are not public if classified as either nonpublic or private. We affirm.

This case arises from the 2008 election of the United States Senator from Minnesota. The 2008 Senate race was decided after a recount, election contest, and appeal, in which we unanimously affirmed the decision of an election contest court that Al Franken received 312 more votes than Norm Coleman. *Sheehan v. Franken (In re Contest of Gen. Election Held on Nov. 4, 2008, for the Purpose of Electing a U.S. Senator from the State of Minn.)*, 767 N.W.2d 453, 456 (Minn.2009).

Sealed absentee ballots, such as the ballots at issue here, were scrutinized throughout the proceedings that decided

the 2008 election. The initial election canvass showed that Coleman received 206 votes more than Franken. *Sheehan,* 767 N.W.2d at 457. With more than 2.9 million votes cast in the election, the vote differential between Coleman and Franken was small enough to trigger a statewide manual recount. *Id.* In response to a petition filed by Coleman during the recount, we ordered the candidates and election officials to devise and follow a procedure for reviewing sealed absentee ballot envelopes that had been rejected by election officials on or before election day. *Coleman v. Ritchie (Coleman I),* 758 N.W.2d 306, 308 (Minn.2008) (order with opinion to follow); *Coleman v. Ritchie (Coleman II),* 762 N.W.2d 218, 233 (Minn.2009) (opinion). Under our order, if the candidates and officials agreed that a sealed absentee ballot had been rejected improperly, then the sealed absentee ballot would be opened. *Coleman I,* 758 N.W.2d at 308. After our order, on January 3, 2009, the Office of the Secretary of State opened and counted 933 sealed absentee ballots that were previously rejected. *Sheehan,* 767 N.W.2d at 457. The Canvassing Board then certified election results showing Franken with a margin of 225 votes over Coleman. *Id.*

Coleman filed an election contest in which he sought to have more sealed absentee ballots opened. *Id.* We appointed an election contest court composed of three judges to hear and decide the election contest. *Id.* After trial, the three-judge panel ordered another 351 sealed absentee ballots to be opened and counted, and the court found that Franken received 312 more votes than Coleman, entitling Franken to the certificate of election as United States Senator from Minnesota. *Id.* We affirmed on June 30, 2009. *Id.* at 453, 471.

On June 22, 2009, television stations KSTP–TV, KSTC–TV, WDIO–TV, KAAL–TV, and KSAX–TV sent a letter to all county election officials in the state requesting "access to any data" that the counties maintained "referring to rejected absentee ballots that were identified by the campaigns of U.S. Senate candidates Franken or Coleman as being subjected to objection or challenge," as well as other data "that would disclose the reasons why the absentee ballots were rejected." The stations alleged that the absentee ballots were public data under the Minnesota Government Data Practices Act (MGDPA), Minn.Stat. ch. 13 (2010). Ramsey County denied the stations' request on July 7, 2009, relying on Minn.Stat. § 13.37, subd. 2, which provides that "sealed absentee ballots prior to opening by an election judge" are "private data with regard to data on individuals" and "nonpublic data with regard to data not on individuals."

The stations brought an action for declaratory judgment, asking the district court to rule that the sealed absentee ballots were public government data under the MGDPA and thus subject to public inspection and copying. The court granted summary judgment to the stations, deciding that the MGDPA's general presumption that government data are public, *see* Minn.Stat. § 13.03, subd. 1, applied to sealed absentee ballots after an election. Ramsey County appealed, and the Minnesota Court of Appeals reversed. *KSTP–TV v. Ramsey Cnty.,* 787 N.W.2d 198, 202 (Minn.App.2010). The court of appeals concluded that Minn.Stat. § 13.37, subd. 2, unambiguously classifies sealed absentee ballots as nonpublic or private data. *Id.* at 201. The court of appeals declined to decide whether the ballots are data on individuals because the data are not public if classified as either nonpublic or private. *Id.* The stations petitioned for, and we granted, review.

## I.

The question in this appeal is whether sealed absentee ballots that were not accepted for counting in the 2008 general election are public data under the MGDPA. This issue presents a question of statutory interpretation, which we review de novo. *See Larson v. State,* 790 N.W.2d 700, 703 (Minn.2010). We begin statutory interpretation with the plain language of the statute. *In re 2010 Gubernatorial Election,* 793 N.W.2d 256, 259 (Minn.2010). If the language is ambiguous because it is susceptible to more than one reasonable interpretation, we apply other canons of construction to ascertain and effectuate the intent of the Legislature. *See In re Welfare of J.B.,* 782 N.W.2d 535, 539–40 (Minn.2010). But if the statute is unambiguous on its face, we look no further than the plain language to determine the statute's meaning. *In re 2010 Gubernatorial Election,* 793 N.W.2d at 259. When examining the plain language of a statute, we construe words and phrases according to their common usage. Minn. Stat. § 645.08 (2010). We also "read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). When relying on the plain statutory text, we read words and phrases "to avoid absurd results and unjust consequences." *Id.* at 278.

The relevant portion of the MGDPA, Minn.Stat. § 13.37, subd. 2, states in full:

The following government data is classified as nonpublic data with regard to data not on individuals, pursuant to section 13.02, subdivision 9, and as private data with regard to data on individuals, pursuant to section 13.02, subdivision 12: Security information; trade secret information; *sealed absentee ballots prior to opening by an election judge;* sealed bids, including the number of bids received, prior to the opening of the bids; parking space leasing data; and labor relations information, provided that specific labor relations information which relates to a specific labor organization is classified as protected nonpublic data pursuant to section 13.02, subdivision 13.

(Emphasis added.) The stations argue that this subdivision is ambiguous and that numerous policy concerns require us to interpret section 13.37, subdivision 2, to permit public access to sealed absentee ballots after an election is complete. We disagree.

## A.

We first turn to the classification of sealed absentee ballots under the MGDPA. The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." Minn.Stat. § 13.01, subd. 3. The purpose of the MGDPA is "to reconcile the rights of data subjects to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing. The Act also attempts to balance these competing rights within a context of effective government operation." *Montgomery Ward & Co. v. Cnty. of Hennepin,* 450 N.W.2d 299, 307 (Minn.1990) (quoting Donald A. Gemberling & Gary A. Weissman, *Data Privacy: Everything You Wanted to Know About the Minnesota Government Data Practices Act—From "A" to "Z,"* 8 Wm. Mitchell L.Rev. 573, 575 (1982)). Under the MGDPA, government data are presumed public "unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public." Minn.Stat. § 13.01, subd. 3. Government data are "not public"

if they fall within one of several classifications set out by statute in the MGDPA.[1]

First, all government data falls into one of two main categories based on the type of information included in the data: (1) data on individuals, or "government data in which any individual is or can be identified as the subject of that data," Minn.Stat. § 13.02, subd. 5, and (2) data not on individuals, which is all other government data, Minn.Stat. § 13.02, subd. 4. The MGDPA classifies data from each of these two categories into different levels of access. The levels of access for data on individuals are "public,"[2] "private,"[3] and "confidential,"[4] and the levels of access for data not on individuals are "public,"[5] "nonpublic,"[6] and "protected nonpublic."[7] "Public data" is government data that is accessible to the general public. Minn. Stat. § 13.02, subds. 14, 15. In contrast, "not public data" is all other government data,[8] and the MGDPA does not permit public access to not public data, see Minn. Stat. § 13.03, subd. 1. "Private data on individuals" and "nonpublic data" are two types of not public data; both are accessible only to the individual subject of the data, if any. Minn.Stat. § 13.02, subds. 9, 12.

The statute at issue in this case, Minn. Stat. § 13.37, subd. 2, classifies certain government data as "private data with regard to data on individuals" and "nonpub-lic data with regard to data not on individuals." Both of these access levels fall within the definition of "not public data" in Minn.Stat. § 13.02, subd. 8a; consequently, the government data specifically enumerated in Minn.Stat. § 13.37, subd. 2, are not public data. The MGDPA therefore does not permit the general public to access the government data described in section 13.37, subdivision 2. See Minn.Stat. § 13.01, subd. 3; Minn.Stat. § 13.03, subd. 1.

■ The stations claim that the MGDPA's failure to specify whether sealed absentee ballots are data on individuals or data not on individuals renders Minn.Stat. § 13.37, subd. 2, ambiguous. We disagree. The stations correctly argue that government data cannot be at the same time private and nonpublic. Compare Minn. Stat. § 13.02, subd. 9 (specifying that "nonpublic data" applies only to data not on individuals), and Minn.Stat. § 13.02, subd. 12 (defining "private data on individuals"). As the stations note, however, the MGDPA protects data, not documents. See generally Minn.Stat. § 13.02 (defining government data as "data" rather than "documents"). A single document may contain data that is data on individuals and data not on individuals; therefore, a single ballot may contain both private and nonpublic data. Indeed, the stations make

1. "The MGDPA is fundamentally different from other state statutes and the Federal Freedom of Information Act (FOIA).... While the FOIA prohibits disclosure that would constitute 'an unwarranted invasion of personal privacy,' the Minnesota Legislature has essentially defined 'unwarranted invasion of personal privacy.' " Margaret Westin, *The Minnesota Government Data Practices Act: A Practitioner's Guide and Observations on Access to Government Information*, 22 Wm. Mitchell L.Rev. 839, 851–52 (1996).

2. Minn.Stat. § 13.02, subd. 15.

3. Minn.Stat. § 13.02, subd. 12.

4. Minn.Stat. § 13.02, subd. 3.

5. Minn.Stat. § 13.02, subd. 14.

6. Minn.Stat. § 13.02, subd. 9.

7. Minn.Stat. § 13.02, subd. 13.

8. " 'Not public data' means any government data which is classified ... as confidential, private, nonpublic, or protected nonpublic." Minn.Stat. § 13.02, subd. 8a.

this very argument when they argue that the absentee ballots at issue here may be separated from their return envelopes. Therefore, Minn.Stat. § 13.37, subd. 2, is not ambiguous simply because it classifies sealed absentee ballots as containing information that is both private and nonpublic under the MGDPA's classification system.

Furthermore, the very fact that we can apply the plain language of the MGDPA to the facts of this case belies the stations' argument. *See ILHC of Eagan, LLC v. Cnty. of Dakota*, 693 N.W.2d 412, 419 (Minn.2005) (noting that statutory construction is unnecessary "[w]hen a statute's meaning is plain from its language as applied to the facts of the particular case"). Both nonpublic and private data are inaccessible to members of the public who are not the subject of the data. For that reason, it is unnecessary for the statute to specify, or for us to decide, whether sealed absentee ballots not opened by an election judge constitute data on individuals.[9]

## B.

■ We next turn to the plain meaning of "sealed absentee ballots prior to opening by an election judge." To determine whether this phrase is reasonably susceptible to more than one meaning, we look to the statutory definitions and common uses of its component terms. *See* Minn.Stat. § 645.08; *Schroedl*, 616 N.W.2d at 277. The phrase "sealed absentee ballots prior to opening by an election judge" contains two main terms for our consideration: (1) "sealed absentee ballot," and (2) "prior to opening by an election judge."

The descriptive term "absentee ballot" is unambiguous in light of common usage. An absentee ballot is "a ballot cast (as by mail) by a voter unable to be present in person at the polls." *Webster's Third International Dictionary of the English Language Unabridged* 6 (2002). No party to this appeal argues that "absentee ballot" is ambiguous.

To ascertain the plain meaning of "sealed" and "prior to opening by an election judge," we turn to Minnesota Statutes chapter 203B (2008) and Minnesota Rules chapter 8210 (2007) which set forth the procedures and rules for absentee voting in the 2008 general election. *See All Parks Alliance for Change v. Uniprop Manufactured Hous. Cmty. Income Fund*, 732 N.W.2d 189, 193 (Minn.2007) (noting that a plain-language statutory analysis requires the statute to be interpreted "in light of its surrounding sections").

We previously outlined the absentee voting procedure used in the 2008 general election, *see Coleman II*, 762 N.W.2d at 220–21, and a review of that procedure is helpful in defining a sealed absentee ballot. Voting in absentia is a privilege, and absentee voters in the 2008 election were required to make a written application for an absentee ballot. *See* Minn.Stat. § 203B.04, subd. 1. If the application met the requirements of section 203B.04, subdivision 1, the voter was provided with a ballot for the 2008 general election, a ballot security envelope, and a ballot return

---

9. The stations also argue that any not public classification of sealed absentee ballots was intended "simply to limit access to the sealed absentee ballots until the election was over and tabulation of the votes commenced." According to the stations, a better reading of Minn.Stat. § 13.37, subd. 2, is one that interprets the statute as expiring "after election day." But we do not read language into a statute that the Legislature has "purposely omitted or inadvertently overlooked." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn.2010); *see also Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001). We therefore decline to abandon the plain language of Minn.Stat. § 13.37, subd. 2, for an interpretation that inserts a temporal limitation on the not public classification of absentee ballots.

envelope. Minn.Stat. §§ 203B.06–.07. After marking the ballot, the voter was instructed to place the ballot inside the ballot security envelope, and then place the sealed ballot security envelope containing the ballot inside the return envelope. Minn.Stat. §§ 203B.07–.08; Minn. R. 8210.0500. The voter then completed the certificate of eligibility on the back of the ballot return envelope and returned the sealed ballot return envelope to the county auditor or municipal clerk by 3:00 p.m. on November 4, 2008. *See* Minn.Stat. § 203B.08, subd. 1; Minn. R. 8210.0500.

Election judges then took receipt of the sealed return envelopes containing the ballot security envelopes and absentee ballots. Minn.Stat. § 203B.12, subd. 1. At least two election judges examined the sealed return envelopes and marked each envelope as either accepted or rejected. Minn.Stat. § 203B.12, subd. 2. A return envelope was marked "Accepted" if the following requirements were met:

> (1) the voter's name and address on the return envelope were the same as the information provided on the absentee ballot application;

> (2) the voter's signature on the return envelope was the genuine signature of the individual who made the application for an absentee ballot, and the certificate of eligibility to vote by absentee ballot had been completed as prescribed in the directions for casting an absentee ballot;

> (3) the voter was registered and eligible to vote in the precinct or had included a properly completed voter registration application in the return envelope; and

> (4) the voter had not already voted in that election, either in person or by absentee ballot.

*Id.* If at least a majority of the election judges determined that a return envelope failed to meet one of the aforementioned requirements, the sealed return envelope was marked "Rejected," *id.*, returned unopened to the county auditor, and the enclosed absentee ballots were not counted in the election. *Coleman II,* 762 N.W.2d at 221.

With this statutory scheme in mind, we return to the phrase "sealed absentee ballots prior to opening by an election judge" found in Minn.Stat. § 13.37, subd. 2. Neither Minnesota Statutes chapter 203B nor Minnesota Rules chapter 8210 use the specific phrase "sealed absentee ballot" that appears in section 13.37, subdivision 2, and the absentee voting procedure described in chapters 203B and 8210 makes clear that once a voter marks an absentee ballot, the ballot itself is not "sealed" in any way. Instead, chapter 203B refers to absentee ballots as *sealed within envelopes;* the absentee ballots in the 2008 general election were sealed within a ballot security envelope, which then was sealed within a ballot return envelope. *See* Minn.Stat. §§ 203B.07–.08; Minn. R. 8210.0500, subp. 2; *Coleman II,* 762 N.W.2d at 220; *see also Webster's, supra,* at 2047 (defining the verb "seal" as "to keep shut, enclosed, or confined"). Therefore, the phrase "*sealed absentee ballot*" could refer to an absentee ballot that is sealed within either the ballot security envelope or the ballot return envelope. But absentee voters were instructed, but not *required,* to place absentee ballots in the ballot security envelope. Minn.Stat. § 203B.24, subd. 1 (noting that "failure to place the ballot within the security envelope before placing it in the outer white envelope [was] not a reason to reject an absentee ballot"); *see also* Minn. R. 8210.0500 (clarifying in absentee voting instructions that the tan security envelope was the ballot security envelope referred to in Minn.Stat. ch. 203B, and the outer white envelope was the return envelope). Because Minnesota law did not require all absentee ballots to be sealed within a ballot security envelope, the sole reasonable

interpretation of "sealed absentee ballot" is an absentee ballot sealed within the ballot return envelope.

We also conclude that the second term, "prior to opening by an election judge", is susceptible to only one reasonable interpretation. Election judges are qualified individuals appointed pursuant to statute to serve their voting precincts in matters related to elections.[10] *See* Minn.Stat. §§ 204B.17–.29 (2008). In the 2008 general election, election judges opened ballot envelopes containing absentee ballots if the envelope was reviewed and marked "Accepted" by at least two election judges. *See* Minn.Stat. § 203B.12, subds. 2, 4. Ballot return envelopes marked "Rejected" were returned unopened to the county auditor. *Coleman II*, 762 N.W.2d at 221. Therefore, the sole reasonable interpretation of the phrase "sealed absentee ballot prior to opening by an election judge" is an absentee ballot that is sealed within a ballot return envelope and has not yet—or ever—been opened by an election judge.

### C.

▉ Having concluded that Minn.Stat. § 13.37, subd. 2, is unambiguous, we turn to the ballots at issue in this appeal. As applied to absentee ballots submitted in the 2008 general election, "sealed absentee ballots prior to opening by an election judge" are absentee ballots sealed within ballot return envelopes that have not been opened by an election judge. Here, the absentee ballots were sealed inside ballot return envelopes, marked "Rejected" by at least two election judges, and returned to Ramsey County. Because the absentee ballots were sealed within ballot return envelopes and never opened by an election judge, they are "sealed absentee ballots prior to opening by an election judge." Minnesota Statutes § 13.37, subd. 2, classifies "sealed absentee ballots prior to opening by an election judge" as not public data under the MGDPA. Government data classified as "not public" may not be accessed by the public for inspection and copying. Because the ballots here are "sealed absentee ballots" classified as not public government data, and the stations are not the subject of the data, the MGDPA does not permit the stations to access and copy the unopened absentee ballots that were not counted in the 2008 general election.

### II.

The stations argue that a "simplistically literal" interpretation of Minn.Stat. § 13.37, subd. 2, results in an absurd application of the statute that is contrary to the purpose behind the MGDPA.

The stations argue that sealed absentee ballots and the corresponding ballot envelopes are "packets" that may be separated into their component parts. The stations allege that because "a ballot in isolation does not identify the voter, it is no longer classified as 'private data on individuals' ... and it is therefore covered by the general presumption of public access found

---

10. The stations assert that a proper interpretation of Minn.Stat. § 13.37, subd. 2, must account for the fact that election judges "serve only on election day." We reject this premise. By statute, the duties of an election judge begin before election day and election judges may continue to serve after an election has ended. *See* Minn.Stat. §§ 203B.23, .24 (defining duties of election judges to include inspection of ballot return envelopes upon receipt); *see also* Minn.Stat. § 203B.13 (ex-

plaining that, in the 30 days prior to the election, election judges sit on absentee ballot boards to inspect and mark absentee ballot return envelopes as accepted or rejected); Minn.Stat. §§ 204C.35, .36 (2008) (stating that, in recounts, a candidate who requests a discretionary recount is responsible for expenses incurred by "any election judge ... or other personnel who participate in the recount").

in the Data Practices Act." To support their argument that the absentee ballots at issue should be separated from their envelopes, the stations note that the MGDPA specifically provides for the separation of public and not public government data. *See* Minn. Stat. § 13.03, subd. 3(c). But separation of absentee ballots from ballot return envelopes is inappropriate here. As outlined above, Minnesota Statutes chapters 203B and 204B set out specific procedures to be followed in the 2008 general election. These statutes do not authorize opening absentee ballots for purposes unrelated to an ongoing election, and we will not abandon the plain language of a statute in pursuit of its spirit. *See* Minn. Stat. § 645.16 (2010).[11]

We conclude that the plain language of Minn.Stat. § 13.37, subd. 2, when read in conformity with the MGDPA and statutes governing absentee voting, unambiguously classifies unopened absentee ballots not counted in the 2008 general election as not public government data. Because the absentee ballots are not public data, the stations are not entitled under the MGDPA to inspect and copy the disputed ballots.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.

---

11. This same principle of adhering to the letter of the law leads us to reject the stations' other policy arguments. The stations strenuously argue that they should be allowed access to the absentee ballots because there should be "maximum transparency with respect to the election process" and "the state's public officials and the public generally will benefit from the most comprehensive possible presentation of the facts and circumstances surrounding the events of the 2008 election." But the reasons underlying a demand for access to public data under the MGDPA are immaterial to the validity of the request. *See* Minn.Stat. § 13.05, subd. 12 ("Unless specifically authorized by statute, government entities may not require persons to identify themselves, state a reason for, or justify a request to gain access to public government data."). Furthermore, even if access to these sealed absentee ballots had a perceived public benefit, vindication lies with Legislature, not the courts. *See In re 2010 Gubernatorial Election*, 793 N.W.2d at 264 n. 12 (directing the petitioner's concerns about election law policy to the Legislature).