STATE of Minnesota, Plaintiff,

v.

Walter Jamille RANDOLPH, Defendant,

v.

County of Rice, intervenor, Respondent,

v.

State Board of Public Defense, intervenor, Appellant.

No. A10–1557.

Supreme Court of Minnesota.

July 20, 2011.

Lori Swanson, Attorney General, St. Paul, MN, and G. Paul Beaumaster, Rice County Attorney, Terence Swihart, Assistant County Attorney, Faribault, MN, for respondent.

Bradford S. Delapena, Special Assistant Public Defender, St. Paul, MN, for appellant.

Donald F. Ryan, Crow Wing County Attorney, Brainerd, MN, for amicus curiae Minnesota County Attorneys Association.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, St. Paul, MN, for amicus curiae Minnesota Attorney General.

William L. Bernard, Grannis & Hauge, P.A., Eagan, MN, John L. Fossum, Fossum Law Office, Northfield, MN, Richard P. Ohlenberg, Ohlenberg Law Office, Richfield, MN, for amicus curiae Criminal Law Section Minnesota State Bar Association.

## OPINION

GILDEA, Chief Justice.

The questions presented in this case are: (1) whether the district court erred in ordering a public defender to represent an indigent misdemeanant on appeal; (2) whether the court erred in ordering the public defender system to pay for the representation costs of that appeal; and (3) whether the court erred in ordering the State Public Defender's office to pay for the transcripts required for that appeal.

Because the Legislature has not authorized public defenders to represent indigent misdemeanants on appeal, we reverse the district court's order appointing the public defender and the district court's order that the State Public Defender's office pay for any required transcripts, and we reinstate an earlier order appointing private counsel.

Following a March 31, 2009 incident, the State charged Walter Jamille Randolph with one count of misdemeanor domestic assault, in violation of Minn.Stat. § 609.2242, subd. 1(1) (2010), and one count of driving after suspension, in violation of Minn.Stat. § 171.24, subd. 1 (2010). The State later added one count of misdemeanor criminal damage to property, in violation of Minn.Stat. § 609.595, subds. 2, 3 (2010), and one count of disorderly conduct, in violation of Minn.Stat. § 609.72, subd. 1(3) (2010). On May 15, 2009, the district court determined that Randolph qualified for a public defender under Minn. Stat. § 611.14(1) (2010) in connection with these charges and appointed the Third District Public Defender to represent Randolph at trial.

Following a jury trial on January 6, 2010, Randolph was convicted of misdemeanor domestic assault. On March 24, 2010, the district court sentenced Randolph to serve seven days in jail, pay a fine, and pay public defender co-pay and reimbursement costs. That same day, Randolph submitted an application for public defender representation on appeal. On March 26, the court reviewed and preliminarily approved Randolph's application for a public defender for his appeal. The record does not contain any order reflecting this approval. But on March 29, a different district court judge, the Honorable Bernard Borene, issued an order appointing private counsel, Jorma Cavaleri, to represent Randolph on appeal. Judge Borene's order referenced inapplicable juvenile protection statutes, Minn.Stat. §§ 260C.163, subd. 3, and 260C.331, subd. 3(4) (2010), as authority to appoint private counsel and to require Rice County to pay "reasonable attorney's fees" to cover the cost of appointed private counsel.[1]

On May 27, 2010, the Rice County Attorney's Office submitted a letter to the district court objecting to Judge Borene's order appointing private counsel to represent Randolph and assigning financial responsibility for that private counsel to the County. The County's objection was referred to the Honorable Thomas Neuville, and he ordered a hearing to determine who should be appointed to represent Randolph on appeal and which entity is responsible for the costs of Randolph's representation. The court also joined intervenors Rice County and the State Board of Public Defense ("the Board") as parties to the ancillary action to determine which entity has responsibility for Randolph's representation on appeal.

At the hearing on July 12, 2010, the County and the Board each argued that the other entity was responsible for the costs of Randolph's representation. After the hearing, the district court vacated the previous order appointing private counsel and ordered the State Public Defender's office or District Public Defender's office to either substitute one of its attorneys for the appointed private counsel or to pay appointed counsel "reasonable attorney's fees." The court also ordered the State Public Defender's office to pay transcript costs.

1. Randolph filed his appeal from his misdemeanor conviction on April 5, 2010, represented by Cavaleri, his appointed private counsel. Cavaleri ordered a trial transcript in preparation for Randolph's appeal on the merits.

The Board filed a notice of appeal to the court of appeals and then filed a petition for accelerated review to this court. We granted the Board's petition, and the court of appeals stayed Randolph's appeal pending resolution of the issues raised in the Board's petition.[2]

## I.

■ We turn first to the question of whether the district court erred by appointing a public defender to represent Randolph, a misdemeanant, on appeal. Two years ago, we held that indigent persons convicted of misdemeanors are entitled to appointed counsel on first review of their conviction by postconviction proceeding. *Morris v. State*, 765 N.W.2d 78, 80–83 (Minn.2009). The right to counsel recognized in *Morris* for first review by postconviction proceeding logically applies as well to first review by direct appeal, as in this case. The parties do not dispute that Randolph is indigent and therefore entitled to court-appointed counsel under *Morris*. We also held in *Morris* that the constitutional right to court-appointed counsel is not necessarily coextensive with the statutory right to public defender representation. *Id.* at 84; *see also State v. Jones*, 772 N.W.2d 496, 502 (Minn.2009). Where counsel is constitutionally required and there is no statutory right to a public defender, the district court exercises its inherent authority to appoint private counsel. *See In re Welfare of J.B.*, 782 N.W.2d 535, 540 (Minn.2010).

In this case, the district court appointed a public defender to represent Randolph on appeal. The Board argues that public defender appointment was erroneous because under Minn.Stat. § 611.14(2) (2010),

only felons and gross misdemeanants enjoy the statutory right to public defender representation on appeal. The County responds that Minn.Stat. § 611.18 (2010) requires district courts to order a public defender to represent an otherwise eligible misdemeanant through all stages of his proceeding, including his appeal.

■ The parties' arguments present a question of statutory interpretation that we review de novo. *J.B.*, 782 N.W.2d at 539. The object of all statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). When interpreting a statute, we "first assess[ ] whether the statute's language, on its face, is clear or ambiguous." *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 434 (Minn.2009) (citation omitted) (internal quotations marks omitted). We "construe words and phrases according to their plain and ordinary meaning." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). A statute is read as a whole and each section is interpreted "in light of the surrounding sections to avoid conflicting interpretations." *Id.* Whenever possible, "[e]very law shall be construed . . . to give effect to all its provisions." Minn.Stat. § 645.16. If statutory language is unambiguous on its face, "we do not look further to determine [its] meaning." *In re 2010 Gubernatorial Election*, 793 N.W.2d 256, 259 (Minn.2010).

Minnesota Statutes ch. 611 (2010) defines the statutory right to public defender representation. We therefore first look to the plain language of chapter 611 to determine whether Randolph is entitled to public defender representation. The parties

---

**2.** After the district court vacated the original order of appointment, the Third District Public Defender filed a notice of substitution of counsel for Randolph. At the public defend-

er's request, the court of appeals has stayed further proceedings in Randolph's appeal pending resolution of the issues raised in the Board's petition.

primarily rely on two provisions in this chapter.

The Board primarily relies on section 611.14 to support its position that there is no statutory right to public defender representation for misdemeanants on appeal. Section 611.14 provides certain indigent persons with the right to public defender representation. Relevant persons include:

(1) a person *charged* with a felony, gross misdemeanor, or misdemeanor . . . ;

(2) a person *appealing* from a conviction of a felony or gross misdemeanor, or a person convicted of a felony or gross misdemeanor, who is pursuing a post-conviction proceeding and who has not already had a direct appeal of the conviction.

Minn.Stat. § 611.14 (emphasis added). The Board contends that because persons appealing from misdemeanor convictions are not included in the list of those entitled to public defender representation under Minn.Stat. § 611.14(2), Randolph is not entitled to public defender representation on appeal.

The County relies on Minn.Stat. § 611.18 for its position that Randolph is entitled to public defender representation on appeal. The statute states in relevant part, "If it appears to a court that a person requesting the appointment of counsel satisfies the requirements of this chapter, *the court shall order the appropriate public defender to represent the person at all further stages of the proceeding through appeal, if any.*" Minn.Stat. § 611.18 (emphasis added). The district court held that this language in section 611.18 required the public defender initially appointed to represent Randolph at trial—that is, the Third District Public Defender—to continue representing Randolph through his misdemeanor appeal.

The district court's conclusion that Randolph is entitled to a public defender finds support in language in the first sentence of section 611.18. But we cannot interpret this language in isolation. Rather, we interpret this language in context with the other provisions in chapter 611 relating to public defender representation on appeal. *See Schroedl,* 616 N.W.2d at 277. When we read sections 611.14 and 611.18 together and within the context of other provisions of chapter 611, we conclude that the court erred in appointing a public defender to represent Randolph on appeal.

Section 611.14 addresses which persons are eligible for public defender representation. Minn.Stat. § 611.14 (defining who is "entitled to be represented by a public defender"); *see also J.B.,* 782 N.W.2d at 541 (relying on section 611.14 to determine whether parents were entitled to public defender representation in juvenile protection proceedings); *In re Welfare of S.L.J.,* 782 N.W.2d 549, 554–55 (Minn.2010) (same). And section 611.18 addresses, assuming the other provisions in chapter 611 are satisfied, which public defender—district or state—is to be assigned to represent the defendant. *See* Minn.Stat. § 611.18 ("If it appears to a court that a person requesting the appointment of counsel satisfies the requirements of this chapter, the court shall order the *appropriate* public defender to represent the person . . . ." (emphasis added)). Because Randolph is not eligible for a public defender under section 611.14, he does not "satisf[y] the requirements of" chapter 611, and there is no "appropriate" public defender to represent him on appeal. Minn.Stat. § 611.18.

Specifically, according to the plain language in section 611.14, the district court is to look at clause (1) in section 611.14 when appointing a public defender to represent a person *charged* with a crime, and

to clause (2) in section 611.14 when appointing a public defender to represent a person *appealing* a conviction. Because Randolph was seeking public defender representation on appeal, the court should have looked at only clause (2) and determined that as a misdemeanant appellant, Randolph is not entitled to public defender representation. This is so because a person appealing a misdemeanor conviction is not included in the list of persons entitled to public defender representation in clause (2). *See* Minn.Stat. § 611.14(2); *J.B.*, 782 N.W.2d at 543 (stating that we are "guided by the canon of statutory construction 'expressio unius est exclusio alterius'—that the expression of one thing is the exclusion of another"). Because Randolph is not entitled to a public defender under the plain language of sections 611.14, he does not "satisf[y] the requirements of" chapter 611. Minn.Stat. § 611.18.

The conclusion that there is no "appropriate" public defender for Randolph on appeal is reinforced when section 611.18 is read in its entirety. The County and the district court focus on the first sentence of this section. But we cannot ignore what follows immediately thereafter:

> For a person appealing from a conviction, or a person pursuing a postconviction proceeding and who has not already had a direct appeal of the conviction, ... the state public defender shall be appointed. For a person covered by section 611.14, clause (1), a district public defender shall be appointed to represent that person.

Minn.Stat. § 611.18. Section 611.18 clearly states that an indigent defendant is to be represented by *different* public defenders at different stages of the proceedings—a district public defender at trial, and a state public defender on appeal. Under the district court and the County's interpretation, however, the *same* public defender—the

Third District Public Defender—would represent a defendant both at trial and appeal. That reading of the first sentence of section 611.18 in isolation is inconsistent with the plain language of the section when read as a whole. Section 611.18, when read in its entirety, confirms that there is no "appropriate" public defender for Randolph on appeal.

Other provisions of chapter 611 also support this conclusion. Under Minn.Stat. § 611.26, subd. 6, a *district* public defender's role is to represent "defendant[s] charged with a ... misdemeanor." Under Minn.Stat. § 611.25, subd. 1(a)(1), a *state* public defender's role is to represent "defendant[s] ... appealing from a conviction of a felony or gross misdemeanor." Neither provision includes representation of defendants appealing from misdemeanors. Thus, the Legislature has not directed either the state or the district public defender to represent misdemeanant appellants and the district court's order conflicts with these provisions.

Finally, our prior interpretation of chapter 611 precludes the County's conclusion that section 611.18 confers a statutory right to a public defender for misdemeanants on appeal. In *Morris v. State*, we concluded, "[T]he legislature has not articulated a policy judgment regarding how the right to misdemeanor appellate counsel should be vindicated." 765 N.W.2d 78, 85 (Minn.2009). We continued, "The development of a state policy on how the right to misdemeanor appellate counsel in the postconviction setting is vindicated involves public policy and funding issues that, in the first instance, are better left to the legislature." *Id.* Our conclusion in *Morris* is directly at odds with the County's contention that the Legislature has already determined in section 611.18 how courts should vindicate the right to misdemeanor appellate counsel.

Based on our statutory analysis, which requires that we give effect to all of the provisions in chapter 611 and read those provisions in light of one another, we hold that the Legislature has not provided, in chapter 611 or elsewhere, for public defender representation for Randolph on appeal. We therefore reverse the district court's order requiring that Randolph be represented on appeal by either the Third District Public Defender or the State Public Defender and reinstate the court's order appointing private counsel to represent Randolph on appeal.[3]

## II.

We turn next to the question of which entity is responsible for the payment of the fees of the private counsel appointed to represent Randolph. The County argues that the Legislature, through the enactment of chapter 611, intended to establish an entirely state-funded public defense system. Thus, the County argues, the Board is responsible for the costs of appointed counsel for misdemeanant appellants. The Board argues that the language of chapter 611 precludes payment by the Board for costs of appointed counsel not specifically provided for in chapter 611.

## A.

We turn first to the County's argument that the Board is responsible for the costs of appointed counsel. As we have concluded above, the Legislature has not provided Randolph with a statutory right to a public defender for his appeal. We have previously determined that the Legislature intended to have the Board pay for representation when "the Legislature *specifically provided* for state public defender representation." *In re Welfare of J.B.*, 782 N.W.2d 535, 546 (Minn.2010) (emphasis added). Because there is no statutory right to public defender representation here, as was the case in *J.B.*, there is likewise no basis to conclude that the Legislature intended that the Board, as opposed to the counties, pay for appointed counsel.

In addition, as we specifically noted in *Morris v. State*, "the legislature has not articulated a policy judgment regarding how the right to counsel should be vindicated." 765 N.W.2d 78, 85 (Minn.2009). There is no evidence in the record before us that the Legislature has now articulated the necessary policy judgment by, for example, increasing the appropriation to the Board of Public Defense in response to *Morris* to cover the costs of misdemeanant appellant public defender representation. To the contrary, the Legislature has de-

---

**3.** The County alternatively argues that even if section 611.18 does not require the district court to order the public defender who initially represented Randolph at trial to continue representing Randolph on appeal, the district court had the discretion to appoint a public defender to represent Randolph "in the interests of justice." For support, the County cites to another part of section 611.18, which states that if "the interests of justice require, the state public defender may be ordered to represent a person." But we must also read this clause in context. The sentence preceding this clause states, "For a person covered by section 611.14, clause (1), a *district* public defender shall be appointed to represent that

person." Minn.Stat. § 611.18 (emphasis added). The statute continues, "If (a) conflicting interests exist, (b) the *district* public defender for any other reason is unable to act, or (c) the interests of justice require, the *state* public defender may be ordered to represent a person." *Id.* (emphasis added). We agree with the Board that the "interests of justice" provision modifies the first provision of the sentence that states, "For a person covered by section 611.14, clause (1)." Randolph was appealing his misdemeanor conviction when he applied for a public defender, and therefore, he was not a person covered by section 611.14(1). Therefore, the "interests of justice" provision does not apply here.

creased the appropriation to the Board since *Morris* was issued. *See* Act of April 1, 2010, ch. 215, art. 11, §§ 2–3, 2010 Minn. Laws 219, 277–78 (reducing the amount appropriated to the Board of Public Defense by $1,893,000).

■ For these reasons, we hold that the Board is not responsible for the costs of appointed counsel representing misdemeanant appellants.

## B.

■ Having concluded that the Board is not responsible for these costs, we turn to the question of whether the County is responsible for these costs. The Board argues, based on Minn.Stat. § 611.27, subd. 5, that the County is responsible to pay the costs of Randolph's appointed private counsel. The Board relies on language providing that "[a]ll other public defense related costs remain the responsibility of the counties." Minn.Stat. § 611.27, subd. 5. Based on this residual language—"all other public defense related costs"—the Board argues the County must pay the costs at issue here. Specifically, the Board contends that the cost to represent a misdemeanant on appeal is an "other public defense related cost." We disagree.

The full text of subdivision 5 makes it apparent that its provisions address the services provided by the district public defender. Subdivision 5 states:

> The board of public defense may only fund those items and services *in district public defender budgets* which were included in the original budgets of district public defender offices as of January 1, 1990. All other public defense related costs remain the responsibility of the counties unless the state specifically appropriates for these. The cost of additional state funding of these items and services must be offset by reductions in

local aids in the same manner as the original state takeover.

Minn.Stat. § 611.27, subd. 5 (emphasis added). Read in the context of the preceding sentence, the phrase "other public defense related costs" plainly refers to items and services in current district public defender budgets that were not included in district public defender budgets in 1990. The County remains obligated to pay for such additional "items and services in district public defender budgets" under the residual provision in subdivision 5, unless the State specifically appropriates for them. And if the State does appropriate for these additional items and services, the third sentence of the subdivision requires a corresponding offset in local aids.

But as we discussed above, the district public defender does not represent indigent defendants on appeal. The state appellate defender generally is responsible for that representation. *See* Minn.Stat. § 611.18. Because an indigent defendant on appeal has no statutory right to a district public defender, Minn.Stat. § 611.27, subd. 5, relating to district public defender budgets, is irrelevant to the question of financial responsibility for private counsel on appeal. The "other public defense related costs" language therefore does not obligate counties to fund appellate counsel.

There is no other provision within chapter 611 or elsewhere in the statutes that reflects a legislative intent to place financial responsibility for appointed private counsel in misdemeanor appeals on the counties. *Cf.* Minn.Stat. § 252A.20, subd. 1 (2010) (directing the counties to pay a "reasonable sum" to a "ward's counsel, when appointed by the court," in developmental disability hearings); Minn.Stat. § 253B.23, subd. 1(a) (2010) (directing the county to pay for a "patient's counsel, when appointed by the court," in civil com-

mitment proceedings); Minn.Stat. § 260B.331, subd. 3(4) (2010) (providing that "reasonable compensation for an attorney appointed by the court to serve as counsel" is "a charge upon the county in which proceedings are held"); Minn.Stat. § 260C.331, subd. 3 (2010) (stating that "reasonable compensation for an attorney appointed by the court to serve as counsel" is "a charge upon the county in which proceedings are held"). We therefore hold that the County is not responsible to pay for the costs of Randolph's private counsel.

## C.

Having concluded that there is no statutory basis for the placement of the financial responsibility on either the Board or the County, we turn to the question of remedy. This issue of remedy is fundamentally a question of how the right to appellate counsel recognized in *Morris* is to be enforced where the Legislature has not provided either for representation by the public defender system or for a method of funding appointed private counsel.

Initially, we observe that it is the obligation of the State of Minnesota to satisfy the constitutional right to appellate counsel that we recognized in *Morris*. *See Morris*, 765 N.W.2d at 85 (noting that the "legislature has not articulated a policy judgment regarding how the right to counsel should be vindicated"); *see also Lavallee v. Justices in Hampden Superior Court*, 442 Mass. 228, 812 N.E.2d 895, 907 (2004) ("The duty to provide counsel to indigent criminal defendants belongs to the State, and the State is in the best position to enforce that duty."). Two years have passed since we decided *Morris*, and the Legislature still has not acted.

In the absence of legislative action to adequately implement the right to appellate counsel in misdemeanor appeals, it is our responsibility to act. We are "the first

line of defense for individual liberties," *State v. Fuller*, 374 N.W.2d 722, 726 (Minn. 1985), and are " 'responsible for safeguarding the rights of [our] citizens.' " *Id.* (alterations in original) (quoting *O'Connor v. Johnson*, 287 N.W.2d 400, 405 (Minn. 1979)); *see also* Minn.Stat. § 480.04 (2010) ("The court shall have power to issue ... all other writs and processes, whether especially provided for by statute or not, that are necessary to the execution of the laws and the furtherance of justice."). It is our constitutional responsibility to "deliver remedies for wrongs and 'justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws.' " *In re Clerk of Lyon Cnty. Courts' Comp.*, 308 Minn. 172, 177, 241 N.W.2d 781, 784 (1976) (quoting Minn. Const. art. I, § 8). Accordingly, "safeguarding the rights of criminal defendants is a historical and constitutional function of the judicial branch." *State v. Chauvin*, 723 N.W.2d 20, 26 (Minn.2006) (citing *State v. Scales*, 518 N.W.2d 587, 592 (Minn.1994); *State v. Paulick*, 277 Minn. 140, 150, 151 N.W.2d 591, 598 (1967)). We have previously held that in the absence of provision for representation by the public defender system, our courts have inherent authority to appoint counsel to fulfill a constitutional right to representation. *See State v. Borst*, 278 Minn. 388, 397, 399–400, 154 N.W.2d 888, 895 (1967); *cf. Morris*, 765 N.W.2d at 85. But recognition of the authority to appoint counsel does not resolve the question of compensation that is presented in this case.

We held in *State v. Dahlgren* that "[w]hile the courts may have inherent power to appoint counsel to represent an indigent person on appeal, we have no power to appropriate money to compensate such counsel. Only the legislature can do that." 259 Minn. 307, 313, 107 N.W.2d 299, 303 (1961). We recognized "that compensation

of counsel appointed to represent indigent defendants in criminal matters [was] often inadequate," but we authorized only that compensation for court-appointed counsel that had been specifically provided for by statute. *Id.* at 319, 107 N.W.2d at 307.

On its face, *Dahlgren* appears to answer the question of whether a court can use its inherent authority to order compensation for appointed counsel without statutory authorization. But since *Dahlgren* was decided, we have revisited the question of the judiciary's inherent authority to order expenditure of funds. *See Lyon Cnty.,* 308 Minn. at 178, 241 N.W.2d at 786 (discussing the judiciary's inherent authority "to compel the payment of public funds for judicial purposes"). Accordingly, we asked the parties to address the issue of inherent authority in supplemental briefs addressing whether:

> assuming that there is no statutory right to a public defender and no provision in statute that assigns financial responsibility for the payment of reasonable attorney fees and other costs arising from the right recognized in *Morris* regarding the first appellate review of a misdemeanor conviction, (1) does this court have inherent authority to order the payment of reasonable attorney fees and other costs for Randolph on appeal, and if so, from whom; and (2) if not, what remedy is available to vindicate the right recognized in *Morris?*

In response, the Board argues that we have inherent power under *Lyon County* to order compensation for appointed counsel and should order such compensation paid by the State through the Office of Management and Budget. The County argues that based on separation of powers, we lack inherent authority to compel payment for counsel from either the County or the executive branch of the State. The County argues that because the Board is in the judicial branch, we have, and should exercise, inherent authority to order the Board either to provide representation or to compensate appointed private counsel.

■ ■ We conclude that because the constitutional obligation to provide counsel is an obligation of the State, to the extent compensation must be paid in order to provide that counsel, the compensation is also an obligation of the State. The question remains whether we have authority to compel that compensation under our inherent authority.

In *Lyon County,* we explained that the court has inherent authority to order expenditure of public funds when it is "necessary to the performance of the judicial function as contemplated in our state constitution." 308 Minn. at 181, 241 N.W.2d at 786. We noted that inherent judicial power "comprehends all authority necessary to preserve and improve the fundamental judicial function of deciding cases." *Id.* at 180, 241 N.W.2d at 786.[4]

4. Other state courts have concluded that such inherent authority may be exercised to compel payment for the cost of constitutionally required counsel where the legislature has not made adequate provision for representation or compensation. *See, e.g., Knox Cnty. Council v. State ex. rel. McCormick,* 217 Ind. 493, 29 N.E.2d 405, 414 (1940). The court in *Knox* reasoned:

> The conclusion seems unavoidable that it is the duty of courts to see that criminal cases are tried; that these cases cannot be legally tried unless the defendant, if he is a pauper, is provided with counsel; that attorneys cannot be compelled to serve without compensation; and therefore that, in order to conduct a legal trial, the court must have power to appoint counsel, and order that such counsel shall be compensated if necessary; and that the right to provide compensation cannot be made to depend upon the will of the Legislature....

*Id.* at 413; *see also Arnold v. Kemp,* 306 Ark. 294, 813 S.W.2d 770, 776–77 (1991) (ordering

■ We need not decide today whether the lack of funding for appointed counsel in this case impinges on the ability of the judicial branch to perform the judicial function of deciding cases to the extent necessary to authorize an exercise of our inherent authority to unequivocally order expenditure of State funds, because another option exists to ensure that Randolph's right to counsel under *Morris* is protected. We have recognized the courts' inherent authority to appoint counsel and that the financial burden to provide such counsel falls on the State. The State therefore should arrange for adequate compensation necessary to fulfill Randolph's constitutional right to counsel. If the State determines not to provide compensation, Randolph's right to counsel will have been violated, and his conviction must be vacated. *Cf. Lavallee v. Justices in Hampden Superior Court,* 442 Mass. 228, 812 N.E.2d 895, 911–12 (2004) (addressing inadequate funding for and availability of constitutionally required defense counsel by requiring dismissal of criminal charges if timely counsel was not provided).

We reach this result because of the circumstances presented here. The district court appointed private counsel to represent Randolph on appeal. The attorney appointed accepted the appointment and commenced an appeal. In the order appointing counsel, the court indicated that the County would pay the attorney for his services. While this order was later rescinded, we have now reinstated the order appointing private counsel. There is no indication in the record that private counsel would have agreed to represent Randolph without reasonable compensation. Because of the posture of this case, where private counsel commenced an appeal with the understanding that he would be compensated, it is necessary that counsel be compensated in order to effectuate Randolph's constitutional right to counsel.

We also limit the scope of our conditional order to this case. In future cases, it might be that private counsel will volunteer to handle appeals for indigent defendants convicted of misdemeanors, and that the district courts will conclude that this representation is sufficient to vindicate indigent defendants' constitutional rights on appeal of misdemeanor convictions.[5] We

public payment for reasonable attorney fees to court-appointed counsel in excess of a statutory cap); *Maas v. Olive,* 992 So.2d 196, 205 (Fla.2008) (same); *People ex rel. Conn v. Randolph,* 35 Ill.2d 24, 219 N.E.2d 337, 341 (1966) (concluding that court had inherent authority to order public funds to be expended to compensate counsel for indigent defendants); *State ex. rel. Stephan v. Smith,* 242 Kan. 336, 747 P.2d 816, 849 (1987) (ordering public reimbursement for appointed counsel's out-of-pocket expenses in excess of a statutory cap). *See generally* Gary D. Spivey, Annotation, *Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes,* 59 A.L.R.3d 569, 617 (1974) (discussing cases and noting that a number of courts have "held it to be within the inherent power of the courts to compel the appropriation or expenditure of public funds to compensate attorneys appointed by the courts" to protect this important judicial function).

5. Several jurisdictions have recognized that purely volunteer legal services fall short of vindication of the constitutional right to counsel. *See, e.g., Cunningham v. Superior Court,* 177 Cal.App.3d 336, 222 Cal.Rptr. 854, 865 (1986) (stating that if courts "require attorneys to work without compensation, we may unwittingly create a form of second-class representation in some cases"); *Simmons v. State Pub. Defender,* 791 N.W.2d 69, 88 (Iowa 2010) (stating that inadequate compensation "threatens the quality of indigent representation because of the perverse economic incentives introduced into the criminal justice system"); *State v. Young,* 143 N.M. 1, 172 P.3d 138, 142 (2007) (holding that, in a complex death penalty case, the fact that appointed counsel were not adequately compensated gave rise to a presumption of ineffective assistance of counsel that compelled the court to stay prosecution until the state made adequate funds available to the defense); *Jewell*

are aware of efforts by Minnesota lawyers to handle criminal appeals pro bono and we commend and encourage these efforts. Ultimately, however, if the State has not adopted a policy to provide for the fulfillment of the right to counsel recognized in *Morris*, and if competent private counsel are not available to satisfy the right, the judiciary will have to fashion a more permanent remedy to vindicate the constitutional right to appellate counsel, which would require deciding the issue of inherent authority to compel funding for counsel that we do not reach today. Alternatively, the courts would have no choice but to consider vacating other convictions appealed and dismissing the charges as a remedy for the violation of the constitutional right to counsel. *See Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (recognizing dismissal of charges as remedy for violation of defendant's constitutional right to a speedy trial); *State v. S.L.H.*, 755 N.W.2d 271, 274 (Minn.2008) ("The judiciary possesses inherent authority to expunge criminal records when expungement is 'necessary to prevent serious infringement of constitutional rights.'" (quoting *State v. C.A.*, 304 N.W.2d 353, 358 (Minn.1981))).

The State is to make arrangements within 90 days of the filing of this opinion to pay the reasonable attorney fees incurred by Randolph's appointed counsel and shall notify the court of appeals of such arrangements. If the State does not do so, the court of appeals shall dismiss the appeal and remand to the district court to vacate the conviction and dismiss all misdemeanor charges against Randolph. We issue this order as an interim step, and once again urge the Legislature to fulfill its constitutional obligation to appropriate

funds necessary to protect the constitutional rights of Minnesotans. *See Brayton v. Pawlenty*, 781 N.W.2d 357, 365 (Minn. 2010) (noting that the "Legislature has the primary responsibility to establish the spending priorities for the state through the enactment of appropriation laws" (citing Minn. Const. art. IV, § 22; Minn. Const. art. XI, § 1)).

### III.

▇▇▇ Finally, we turn to the question of which entity is responsible for Randolph's transcript costs. Both parties contend that the other entity is responsible for Randolph's transcript costs. The County, as did the district court, relies on Minn. R.Crim. P. 28.02, subd. 5, to contend that the State is responsible for the transcript costs of indigent misdemeanant appellants.

Minnesota Rule of Criminal Procedure 28.02, subdivision 5(7), provides the procedures indigent defendants must follow when requesting a trial transcript for appeal. This rule states that if a "court receives a request for transcripts made by an indigent defendant represented by private counsel, the court must submit the request to the State Public Defender's office." Minn. R.Crim. P. 28.02, subd. 5(7). The State Public Defender's office then determines the defendant's "financial eligibility" as set forth in the rule. *Id.* If that defendant "qualifies financially, he or she may request the State Public Defender to order all parts of the trial transcript necessary for effective appellate review." *Id.* The rule states that in these cases the "State Public Defender's office *must* order and pay for these transcripts." *Id.* (emphasis added). Rule 28.02, subdivision 5(11), also provides that "[i]n appeal cases and postconviction cases, the State of

*v. Maynard*, 181 W.Va. 571, 383 S.E.2d 536, 544 (1989) (concluding that "[i]nevitably, economic pressure must adversely affect the manner in which at least some cases are conducted").

Minnesota must bear the cost of transcripts ... from funds available to the State Public Defender's office, if approved by that office, regardless of where the prosecution occurred."

The County argues that under a plain reading of Rule 28.02, subdivision 5(7), because Randolph qualifies financially for counsel, the State Public Defender's office "must order and pay for" the costs of his transcripts. The Board asserts, however, that because the appellate public defender has no duty to represent Randolph on appeal, it has no obligation to furnish him with trial transcripts.

The current version of Rule 28.02, subdivision 5, stems from our decision in *State v. Pederson*, 600 N.W.2d 451 (Minn.1999). In *Pederson*, we rejected the contention that the transcript right is part of a "package," inseparable from the statutory right to public defender representation. *Id.* at 454. Rather, we stated that "the right to public defender representation and the right to a transcript at public expense are two separate rights." *Id.* at 453. We held that Pederson, as an indigent defendant, was entitled to a copy of his trial transcript at public expense even though he elected to decline the public defender's offer of representation and to proceed with private counsel. *Id.* at 454. Using our supervisory powers, we directed the public defender's office to order and pay for the transcript. *Id.* at 455.

In *Pederson*, we asked the Supreme Court Advisory Committee on the Rules of Criminal Procedure to incorporate the holding of that case into the Criminal Rules. *Id.* at 455. We did not discuss in *Pederson* the separate situation presented here, where an appellant is indigent but not eligible for public defender representa-

tion. This discussion was not necessary because the public defender's office offered to represent Pederson on appeal. *Id.* at 452. And in describing the process to be incorporated into the rules, we did not distinguish, or even acknowledge, any difference between indigent criminal appellants who qualify for public defender representation and those who do not. Rather, we stated, "If the public defender determines that the criminal appellant making application is indigent, then the indigent criminal appellant may apply to the public defender for all parts of his trial transcript...." *Id.* at 455.

■ The language we adopted for Rule 28.02, subdivision 5(7), follows this prescription, requiring only financial eligibility, but not eligibility for representation, in order to qualify for a transcript provided by the public defender. In adopting this rule, as in *Pederson*, we did not directly address the distinction between appellants eligible for representation by the public defender and those who are not. In light of our interpretation of the governing statutes today, we must now acknowledge this distinction, and to be consistent in our rulings, we conclude that the right to a public defender-funded transcript contained in Rule 28.02 must be limited to indigent criminal appellants who also qualify for public defender representation.[6]

■ The relevant parts of the trial transcript are an essential element for a criminal appeal, and an indigent criminal appellant is entitled to that transcript at public expense. *See Pederson*, 600 N.W.2d at 454. Based on the analysis *supra* Part II of this opinion, we conclude that the cost of the trial transcript is also an obligation of the State. Accordingly, the State

---

**6.** We note that independent of this case, in a report filed December 8, 2010, the Criminal Rules Advisory Committee recommended that we amend Minn. R.Crim. P. 28.02, subd. 5(7), to so limit the transcript right.

is to make arrangements for payment of the transcript costs within 90 days of the filing of this opinion, subject to the same condition applicable to the order for attorney compensation.

*Reversed in part, affirmed in part; vacated order reinstated.*

Concurring in part, dissenting in part, STRAS and PAGE, JJ.

STRAS, Justice (concurring in part, dissenting in part).

I join the court's opinion, except its conclusion in Part III that the State is responsible for paying for Randolph's trial transcript. The court correctly concludes that the plain language of Minn. R.Crim. P. 28.02, subd. 5(7), requires only financial eligibility by an indigent defendant in order to qualify for a trial transcript paid for by the State Public Defender. The court further recognizes that *State v. Pederson,* 600 N.W.2d 451, 454 (Minn.1999), rejects the argument that the right to a transcript provided by the public defender is part of a "package" deal, "inseparable from the statutory right to public defender representation." Yet the court ignores the plain language of Rule 28.02 and our reasoning in *Pederson* because it perceives an intolerable asymmetry between concluding that the Minnesota Board of Public Defense ("the Board") is *not* responsible for providing representation to Randolph, and then requiring it to pay for Randolph's trial transcript. I disagree with the court's approach.

The plain language of Rule 28.02, subdivision 5(7), is clear and unambiguous: "If the court receives a request for transcripts made by an indigent defendant represented by private counsel, the court must submit the request to the State Public Defender's office for processing.... The State Public Defender's office must order and pay for these transcripts." Because Rule 28.02 unambiguously requires the Board to pay the cost of a criminal appellant's trial transcript if he or she is indigent, the plain language of the rule ends our inquiry. *See State v. Dahlin,* 753 N.W.2d 300, 305–06 (Minn.2008) (stating that procedural rules are first construed according to the plain language of the rule, and if that language is unambiguous, "that plain language *must* be followed" (emphasis added)).

The court is correct that requiring the Board to pay for Randolph's trial transcript does create an asymmetry when Randolph is simultaneously ineligible for the services of a state public defender. But the court does not contend—nor could it—that the plain language of Rule 28.02 creates an *absurd* result that would require us to conclude that the language of the rule is ambiguous. Therefore, the court provides no proper legal basis for ignoring the clear and unambiguous language of Rule 28.02, subdivision 5(7).

Instead of adopting an interpretation of Rule 28.02 that is directly contrary to its plain text, the appropriate procedural mechanism for fixing the asymmetry created by our opinion today is to ask the Supreme Court Advisory Committee on the Rules of Criminal Procedure to revisit Rule 28.02. After due consideration and public comment, we can then consider whether Rule 28.02, subdivision 5(7), requires amendment.[1] In my view, we cre-

---

1. In fact, as the court notes, the process for amending Rule 28.02 has already commenced. In a report, the Supreme Court Advisory Committee on the Rules of Criminal Procedure has recommended that we amend Rule 28.02, subdivision 5(7), to limit the right to a paid transcript from the Board to only those criminal appellants who are also eligible for representation by that office. In my view, the fact that the proper process for

ate too much uncertainty for litigants when we ignore the clear direction provided by our rules of procedure in pursuit of the policy or spirit of a rule. Accordingly, I dissent from the court's conclusion in Part III.

PAGE, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Stras.

amending Rule 28.02 is already underway is even more of a reason to adhere to the current version of the rule. Rather than judicially amending Rule 28.02 through an incorrect interpretation of the rule's text, the new rule, if adopted, can apply prospectively with proper notice to all affected parties.