STATE OF MINNESOTA

IN SUPREME COURT

A25-0017

Original Jurisdiction

Minnesota Voters Alliance, et al.,

Petitioners,

Republican Party of Minnesota,

Petitioner,

vs.

Timothy Walz, in his official capacity as
Governor of the State of Minnesota, et al.,

Respondents,

Tracy West, in her official capacity as County
Auditor of Ramsey County, Minnesota, et al.,

Respondents.

Per Curiam
Took no part, Procaccini, J.

Filed: March 5, 2025
Office of Appellate Courts

—————————————————

James V. F. Dickey, Douglas P. Seaton, Alexandra K. Howell, Upper Midwest Law Center,
Minnetonka, Minnesota, for petitioners Minnesota Voters Alliance, Greg Ryan, and Chris
Bakeman.

Ryan D. Wilson, CrossCastle, PLLC, Minnetonka, Minnesota, for petitioner Republican
Party of Minnesota.

Keith Ellison, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, Saint
Paul, Minnesota, for respondents Timothy Walz, in his official capacity as Governor of the
State of Minnesota, and Steve Simon, in his official capacity as Secretary of State of the
State of Minnesota.

1

John J. Choi, Ramsey County Attorney, Bradley Cousins, Assistant Ramsey County Attorney, Saint Paul, Minnesota, for respondents Tracy West, in her official capacity as County Auditor of Ramsey County, Minnesota, David Triplett, in his official capacity as Chief Election Official of Ramsey County, Minnesota, and Ramsey County.

Gregory J Joseph, Joseph Law Office PLLC, Waconia, Minnesota, for amicus curiae Libertarian Party of Minnesota.

_____

S Y L L A B U S

Minnesota Statutes section 204D.19, subdivision 4 (2024), controls when a writ of special election must issue following a court's determination of a successful election contest for a state legislative seat under Minn. Stat. § 209.10 (2024). The writ of special election issued before the dates provided in Minn. Stat. § 204D.19, subd. 4, was issued prematurely.

Petition granted.

O P I N I O N

PER CURIAM.

On December 27, 2024, Governor Walz issued a "Writ of Special Election to fill a vacancy in the office of State Representative for District 40B in Ramsey County." The writ directed that "[a] special election to fill the vacancy will be held in District 40B on January 28, 2025." On January 4, 2025, petitioners Minnesota Voters Alliance, two voters from House District 40B, and the Republican Party of Minnesota filed a petition under Minn. Stat. § 204B.44 (2024), challenging the writ as issued prematurely. In a January 17, 2025 order with opinion to follow, we held that it was. Accordingly, we ordered the writ

of special election quashed and ordered that all steps necessary be taken to cancel the special election scheduled for January 28, 2025. This opinion explains the reasons for our decision.

**FACTS**

This case is about whether a writ of special election for House District 40B issued on December 27, 2024, was issued prematurely. Representative Jamie Becker-Finn held the seat for House District 40B for the 93rd Legislative Session (2023–24). She did not run for reelection and held that office until January 6, 2025. In the November 2024 general election, Curtis Johnson was elected to represent House District 40B. Paul Wikstrom, the other candidate for House District 40B, brought an election contest under Minn. Stat. §§ 209.02, 209.10 (2024), alleging that Johnson did not meet the residency requirement to serve as that district's representative. On December 20, 2024, the Ramsey County District Court issued its decision in that election contest, issuing findings, conclusions, and an order against Johnson. Consistent with the requirements for the district court under Minn. Stat. § 209.10, subd. 3, the district court's order directed that "[u]nless this matter is appealed to the supreme court, the court administrator shall transmit the findings, conclusions, orders, and records of the proceeding to the Chief Clerk of the Minnesota House of Representatives no later than January 14, 2025 (the first day of the legislative session)." No appeal was filed.[1]

---

[1]     Minnesota Statutes section 209.10, subdivision 4, provides that "[t]he judge's decision may be appealed to the supreme court no later than ten days after its entry in the case of a general election contest." The appeal period expired on December 30, 2024, without an appeal being filed by any party to the election contest.

3

One week later, on December 27, 2024, Johnson sent a letter to the Governor, stating that "I have made the difficult decision not to accept my seat in the Minnesota House of Representatives and to resign from the Office of State Representative effective immediately and irrevocably." Later that day, the Governor issued a writ of special election, stating that "[t]here is a vacancy in the office of State Representative for District 40B of the State of Minnesota, caused by the resignation of Representative-elect Curtis Johnson, effective immediately." As the basis for his authority to issue the writ, the Governor cited Article IV, Section 4, of the Minnesota Constitution, as well as Minn. Stat. §§ 204D.17–.27, 351.01–.02, and 351.055 (2024). The writ set a special election for January 28, 2025. The writ also required that affidavits of candidacy and nominating petitions be filed on Tuesday, December 31, 2024, by 5:00 p.m.

On January 4, 2025, petitioners Minnesota Voters Alliance, two voters from House District 40B, and the Republican Party of Minnesota filed a petition under Minn. Stat. § 204B.44 (2024), challenging the writ as issued prematurely.[2] Petitioners also argued that the writ failed to comply with legal requirements regarding notice. Petitioners brought this suit against the Governor and Secretary of State Steve Simon (the State Respondents), as well as against Ramsey County and Ramsey County officials (the Ramsey County Respondents), who filed separate responses. Both sets of respondents argued the petition is barred by laches, with the State Respondents also defending the writ on the merits.

---

[2]     The next day, on January 5, 2025, petitioners filed an amended petition after they "became aware of an error in the Petition." We accepted the amended petition as the operative petition in this matter.

**ANALYSIS**

The primary issue before us is whether the writ of special election issued on December 27, 2024, was issued prematurely, such that the writ must be quashed and the special election for House District 40B canceled. If not, then we must also determine whether the writ complies with applicable notice requirements. Before addressing either of these issues, however, we must first address whether the petition is barred by laches.

A.

Both the State Respondents and Ramsey County Respondents argue that the petition is barred by laches. "Laches is an equitable doctrine applied to 'prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay.' " *Winters v. Kiffmeyer*, 650 N.W.2d 167, 169 (Minn. 2002) (quoting *Aronovitch v. Levy*, 56 N.W.2d 570, 574 (Minn. 1953)). "[T]he practical question in each case is whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Fetsch v. Holm*, 52 N.W.2d 113, 115 (Minn. 1952). Regarding prejudice, the Ramsey County Respondents highlighted that they have incurred significant expenditures so far in terms of both staff hours and money, which they will incur again if the date of the special election is changed, and that absentee voting in the special election began on January 10, 2025.

We acknowledge the significant time spent and costs incurred by the Ramsey County Respondents. "The first step in a laches analysis," however, "is to determine if petitioner unreasonably delayed asserting a known right." *Monaghen v. Simon*,

5

888 N.W.2d 324, 329 (Minn. 2016). Here, petitioners had a known right sometime on Friday, December 27, 2024, the day the Governor issued the writ calling for the special election. Petitioners filed their petition eight days later, on Saturday, January 4, 2025, which was fewer than five business days after the writ was issued. Although the shortened time frames in a special election may be relevant to evaluating whether any delay was unreasonable, we are unaware of any instance in which we have considered an eight-day time period between the events to be unreasonable, especially when those days included a weekend and a holiday. Here, under the unique circumstances of this case, we conclude that there was not unreasonable delay, and on that ground, that the petition is not barred by laches.

B.

We turn next to whether the writ of special election was issued prematurely. The answer to this question depends upon which statute governs.

Petitioners maintain that because Wikstrom successfully contested Johnson's election in district court under Minn. Stat. § 209.10, the issuance of the writ of special election is governed by Minn. Stat. § 204D.19, subd. 4. Minnesota Statutes sections 204D.17 to 204D.27 generally govern special elections for a state legislative vacancy, and section 204D.19 specifically addresses when special elections are held. Subdivision 4 of that section provides:

> If a vacancy results from a successful election contest, the governor shall issue 22 days after the first day of the legislative session a writ calling for a special election unless the house in which the contest may be tried has passed a resolution which states that it will or will not review the court's determination of the contest. If the resolution states that the house will not

6

review the court's determination, the writ shall be issued within five days of the passage of the resolution.

Minn. Stat. § 204D.19, subd. 4. Petitioners assert that the district court's December 20, 2024 decision in the election contest ruling against Johnson was a "successful election contest" under Minn. Stat. § 204D.19, subd. 4. As such, under this subdivision, a writ of special election could not issue until sometime after the start of the legislative session, which began on January 14, 2025, with the specific date for the writ's issuance depending on any actions by the Minnesota House of Representatives.

The State Respondents dispute the applicability of Minn. Stat. § 204D.19, subd. 4. They argue that Minn. Stat. § 204D.19, subd. 4, "is irrelevant to the current proceeding, because the contest against Johnson was neither successful nor even completed." According to the State Respondents, "[t]he sole binding portion of a legislative contest—a hearing in the affected house of the legislature—never even began."

The State Respondents instead argue the writ was properly issued on December 27, 2024, based on Johnson's letter. The reason stated on the writ for its issuance was that a vacancy was created by Johnson's resignation, effective immediately. The State Respondents also rely on two other statutes for the writ's issuance. The State Respondents argue that, under Minn. Stat. § 204D.19, subd. 2, "[a] Minnesota governor must issue a writ of special election to fill legislative vacancies 'when a vacancy occurs and the legislature will be in session' such that the successful candidate can 'take office and exercise the duties of the office immediately upon election.'" (Quoting Minn. Stat. § 204D.19, subd. 2.) Moreover, Minn. Stat. § 351.055 provides that "[i]f a future vacancy

7

becomes certain to occur and the vacancy must be filled by a special election, the appropriate authorities may begin procedures leading to the special election so that a successor may be elected at the earliest possible time." The State Respondents argue that the effect of Johnson's letter was to create a vacancy when the previous member's term expired on January 6, 2025, and that the Governor—recognizing the vacancy was inevitable—acted under Minn. Stat. § 351.055 by issuing the writ of special election on December 27, 2024, before the vacancy began.

We address each of these arguments in turn.

1.

We start with the question of whether Minn. Stat. § 204D.19, subd. 4, applies here. This requires that we consider Minn. Stat. § 204D.19, subd. 4, against the corresponding statutory scheme for legislative election contests under Minn. Stat. § 209.10; the constitutional principle that each house of the Legislature is "the judge of the election returns and eligibility of its own members," Minn. Const. art. IV, § 6; and the text and structure of Minn. Stat. § 204D.19, subd. 4, itself.

Under Minn. Stat. § 209.10, once a legislative election contest is before a district court, "[t]he judge shall decide the contest, issue appropriate orders, and make written findings of fact and conclusions of law." Minn. Stat. § 209.10, subd. 3. "Unless the matter is appealed to the supreme court," the district court judge is then required, "by the first day of the legislative session," to "transmit the findings, conclusions, orders, and records of the proceeding to the chief clerk of the house of representatives or the secretary of the senate, as appropriate." *Id.* If an appeal is made, then the supreme court, in turn, is required to

8

forward a copy of its decision "to the chief clerk of the house of representatives or the secretary of the senate." *Id.*, subd. 4. Regardless of whether an appeal to the supreme court occurs, subdivision 5 of this same statute then sets forth the process for a legislative hearing on an election contest, a process that includes the House of Representatives or Senate hearing evidence, voting, and entering the proceedings in the journal. *Id.*, subd. 5.

The structure of Minn. Stat. § 209.10 exists, in part, because "there is no question of the Legislature's final authority in this matter." *Scheibel v. Pavlak*, 282 N.W.2d 843, 847 (Minn. 1979). As we have previously explained in addressing this statute,[3] "The constitutional directive is explicit: 'Each house shall be the judge of the election returns and eligibility of its own members.' " *Id.* (quoting Minn. Const. art. IV, § 6). Consistent with this constitutional principle, "[t]he trial judge selected by the parties to the election contest acts, in effect, as an agent of the legislative body involved." *Id.* at 850. The trial judge hears and directs the presentation of evidence, makes findings and conclusions, and submits the record and recommendations to the legislative body.[4] *Id.* Because the trial judge "is acting, in practical effect, as a legislative agent for the purposes of the case, the

---

[3]     The predecessor version of the statute applicable when *Scheibel* was decided is cited and quoted in that opinion. The subsequent amendments to the present version of the law are not substantively significant to this opinion.

[4]     In *Scheibel*, we also raised, without answering, the question of the appropriate role of this court in a legislative election contest, given that this court "cannot and should not act as an agent for the Legislature." *Scheibel*, 282 N.W.2d at 851. Because no appeal to this court was filed from the district court's December 20, 2024 decision in this matter, the questions raised in *Scheibel* regarding this court's role in a legislative special election contest remain "reserved for future decision." *Id.* at 853.

legislative body is absolutely free to accept or reject [the trial judge's] findings and conclusions." *Id.*

Minnesota Statutes section 204D.19, subdivision 4, which is specific to legislative vacancies due to a successful election contest, must operate consistently with the statutory and constitutional framework just described. Subdivision 4 provides that "[i]f a vacancy results from a successful election contest, the governor shall issue 22 days after the first day of the legislative session a writ calling for a special election *unless* the house in which the contest may be tried has passed a resolution which states that it will or will not review the court's determination of the contest." Minn. Stat. § 204D.19, subd. 4 (emphasis added). The timing for the writ's issuance changes only if the house affirmatively passes a resolution. "If the resolution states that the house will not review the court's determination, the writ shall be issued within five days of the passage of the resolution." *Id.*

The State Respondents argue that, based on our decision in *Scheibel* and the constitutional directive that "[e]ach house shall be the judge of the election returns and eligibility of its own members," Minn. Const. art. IV, § 6, an election contest can only be "successful" when decided by the Legislature. In other words, the State Respondents maintain that a "successful election contest" under Minn. Stat. § 204D.19, subd. 4, cannot be a reference to a court decision; an election contest is not "successful" until the house itself has taken up and decided the issue. This, however, is inconsistent with the plain language of subdivision 4, which states that if there is a "successful election contest," the Governor shall issue the writ "22 days after the first day of the legislative session . . . unless the house" passes a resolution as to whether "it will or will not review the *court's*

10

*determination of the contest.*"  Minn. Stat. § 204D.19, subd. 4 (emphasis added). Subdivision 4 itself links the "successful election contest" that triggers that subdivision's operation to "the court's determination of the contest."  Moreover, the State Respondents' argument that it is necessary for the Legislature to act before an election contest can be "successful" for purposes of Minn. Stat. § 204D.19, subd. 4, is unworkable under the subdivision's timing provisions.  Subdivision 4 specifically requires the Governor to issue the writ exactly 22 days after the start of the legislative session if there has been a "successful election contest" and the relevant house has *not* affirmatively acted.  Under the structure of Minn. Stat. § 204D.19, subd. 4, a "successful election contest" must necessarily mean a decision by the court.

The structure of Minn. Stat. § 204D.19, subd. 4, is also consistent with the statutory framework for legislative election contests under Minn. Stat. § 209.10 described above.  If there is a successful election contest in court, under Minn. Stat. § 204D.19, subd. 4, the Legislature still has the ultimate authority to judge the election returns and eligibility of its own members, as is the case under Minn. Stat. § 209.10, subd. 5.  The 22-day window from the start of the legislative session before the Governor must issue the writ ensures that the house "is absolutely free to accept or reject [the trial judge's] findings and conclusions." *Scheibel*, 282 N.W.2d at 850.  Minnesota Statutes section 204D.19, subdivision 4, also ensures that the writ may *not* issue *before* the 22nd day from the start of the legislative session unless the house "has passed a resolution which states that it will or will not review the court's determination of the contest."  It is *only* if the house passes a resolution stating

that it "will *not* review the court's determination" that the writ instead must issue within five days of the resolution's passage. *Id.* (emphasis added).

The State Respondents further argue, however, that if this is how Minn. Stat. § 204D.19, subd. 4, functions, then its operation constitutionally conflicts with the Legislature's authority to judge the eligibility and election returns of its members and the court's limited role in election contests as described in *Scheibel*. But the default timeline for issuance of the writ "[i]f a vacancy results from successful election contest" under Minn. Stat. § 204D.19, subd. 4—that the Governor must issue the writ 22 days after the start of the legislative session unless the house passes a resolution as to whether it will review the court's determination of the election contest—is not an unconstitutional delegation. The Legislature is not delegating authority under this procedure; rather, it is *preserving* its power by preventing the Governor (a member of another branch of government) from acting before the house has a chance to exercise its constitutional prerogative to seat its own members—precisely what the State Respondents say is proper.[5] This is also consistent with the district court's role as "acting, in practical effect, as a legislative agent for the purposes of the case," in which "the legislative body is absolutely free to accept or reject [the trial judge's] findings and conclusions." *Scheibel*, 282 N.W.2d

---

[5]     That a branch of government can be deemed to have exercised one of its constitutional functions and assented to something by taking no action within a fixed period of time is not unique to Minn. Stat. § 204D.19, subd. 4. The Minnesota Constitution itself provides for this with respect to the Governor's power to approve or veto bills. Article IV, Section 23, of the Minnesota Constitution provides that "[a]ny bill not returned by the governor within three days (Sundays excepted) after it is presented to him becomes a law as if he had signed it, unless the legislature by adjournment within that time prevents its return."

at 850.  The Legislature passed Minn. Stat. § 204D.19, subd. 4, to constrain its own power in a specific way:  the statute says that the house must affirmatively act in one of two ways, or it may choose not to act.  The Legislature is placing a deadline on *itself* as to *when* it must exercise its power to act.

Thus, under Minn. Stat. § 204D.19, subd. 4—interpreted consistently with Minn. Stat. § 209.10 and the Minnesota Constitution—a "successful election contest" triggering the Governor's obligation to issue a writ of special election 22 days after the start of the legislative session unless the house passes a resolution, refers to a "court's determination." Accordingly, the district court's election contest decision in the contestant's favor and against Johnson—pending any appeal—was a "successful election contest" that required the writ's issuance to comply with the timing requirements in Minn. Stat. § 204D.19, subd. 4.  Under Minn. Stat. § 204D.19, subd. 4, there was no circumstance under which the writ could issue on December 27, 2024, before the start of the legislative session.

2.

We next turn to whether Johnson's December 27, 2024 letter—either for the reason stated on the writ itself or for the reasons argued by the State Respondents—permitted the writ to issue on December 27, notwithstanding the timing requirements under Minn. Stat. § 204D.19, subd. 4.  If Minn. Stat. § 204D.19, subd. 4, controls, then the writ must be quashed as having been issued prematurely.

Outside of election contests, which are specifically governed by Minn. Stat. § 204D.19, subd. 4, "when a vacancy occurs and the legislature will be in session so that the individual elected as provided by this section could take office and exercise the duties

13

of the office immediately upon election," then "the governor shall issue within five days after the vacancy occurs a writ calling for a special election." Minn. Stat. § 204D.19, subd. 2. Here, the reason provided by the writ itself for its issuance was that "[t]here is *a vacancy* in the office of State Representative for District 40B of the State of Minnesota, caused by the *resignation* of Representative-elect Curtis Johnson, *effective immediately*." (Emphases added.) This stated reason, however, did not permit the writ's issuance on December 27, 2024, independent of the timing requirements in Minn. Stat. § 204D.19, subd. 4.

"Resignations" from office are governed by Minn. Stat. § 351.01 (2024), and that statute permits "*incumbents* of elective offices" to resign in writing "to the officer authorized by law . . . to order a special election to fill the vacancy." Minn. Stat. § 351.01, subd. 1 (emphasis added). Likewise, Minn. Stat. § 351.02(2) provides that an "office shall become vacant" upon "the *incumbent's* resignation." (Emphasis added.) But Johnson was not an incumbent on December 27, 2024. *Cf. Clark v. Pawlenty*, 755 N.W.2d 293, 308 (Minn. 2008) (recognizing, when interpreting a different statute, that "[t]he dictionary definitions of 'incumbent' include '[a] person who holds an office' and '[c]urrently holding a specified office' " (quoting *The American Heritage Dictionary of the English Language* 889 (4th ed. Houghton Mifflin 2000))). At the time of his purported resignation on December 27, 2024, there was an actual incumbent in office. The House District 40B seat continued to be held by Representative Becker-Finn until January 6, 2025. *See* Minn. Const. art. VII, § 7 (declaring "[t]he official year for the state of Minnesota commences on the first Monday in January in each year and all terms of office terminate at that time").

14

Fundamentally, someone cannot "resign" from an office they do not hold. On December 27, 2024, Johnson held no office from which he could "resign." And he certainly could not have done so *immediately* on December 27, 2024, as he purported to do. Accordingly, there was *not* a "vacancy" due to "resignation" on December 27, 2024, of the seat for House District 40B, effective that date, when that seat continued to be held by Representative Becker-Finn.

The stated basis for the writ's issuance on December 27, 2024, is therefore inapplicable and is not a ground for departing from the timing requirements in Minn. Stat. § 204D.19, subd. 4, that otherwise control.

3.

Instead of relying on the stated basis in the writ, the State Respondents characterize Johnson's December 27, 2024 letter as his "abandonment of his claim to a House seat," and maintain that this "created a vacancy when the previous member's term expired on January 6," such that the timing requirements in Minn. Stat. § 204D.19, subd. 4, do not control. Their legal argument that this permitted the Governor to issue the writ on the same day he received Johnson's letter rests on the first sentence of Minn. Stat. § 351.055, which provides: "If a future vacancy becomes certain to occur and the vacancy must be filled by a special election, the appropriate authorities may begin procedures leading to the special election so that a successor may be elected at the earliest possible time."

But even if, as the State Respondents posit, section 351.055 permits the Governor to issue a writ in advance of a vacancy in other situations, it does *not* apply when there is a successful election contest governed by Minn. Stat. § 204D.19, subd. 4. That is because

15

Minn. Stat. § 204D.19, subd. 4, fixes the dates upon which the writ must issue after the start of the legislative session, depending upon the house's actions. Most significantly, Minn. Stat. § 204D.19, subd. 4, expressly prohibits the issuance of a writ until 22 days after the legislative session begins unless the house affirmatively resolves that it will or will not review the court's determination.[6] And, as previously discussed, that is to preserve the ultimate constitutional authority of the Legislature to make the final determination on the question of seating its own members. *See Scheibel*, 282 N.W.2d at 850. That constitutional interest outweighs the more general policy interest of filling the seat as soon as possible in this situation.

Nor does Minn. Stat. § 351.055 otherwise apply here where the State Respondents have not identified any other cognizable "future *vacancy*," as that statute requires. (Emphasis added.) Determining whether a "future vacancy" has occurred for purposes of Minn. Stat. § 351.055 requires that we give effect to all the provisions in chapter 351 and read those provisions in light of each other. *See State v. Randolph*, 800 N.W.2d 150, 157 (Minn. 2011). "Vacancies" are expressly governed in chapter 351 by Minn. Stat. § 351.02. It provides eight specifically enumerated events upon the happening of which an office becomes "vacant," and provides, in full:

---

[6]    In contrast, Minn. Stat. § 204D.19, subd. 2, applies generally "when a vacancy occurs and the legislature will be in session so that the individual elected as provided by this section could take office and exercise the duties of the office immediately upon election," in which case "the governor shall issue *within five days* after the vacancy occurs a writ calling for a special election." (Emphasis added.) Subdivision 2, unlike subdivision 4, does not require the Governor to abstain from issuing the writ for a fixed number of days unless the Legislature acts. The structure of the two provisions is fundamentally different in this regard.

16

Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office:

(1) the death of the incumbent;
(2) the incumbent's resignation;
(3) the incumbent's removal;
(4) the incumbent's ceasing to be an inhabitant of the state, or, if the office is local, of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged;
(5) the incumbent's conviction of any infamous crime, or of any offense involving a violation of the official oath;
(6) the incumbent's refusal or neglect to take the oath of office, or to give or renew the official bond, or to deposit or file such oath or bond within the time prescribed;
(7) the decision of a competent tribunal declaring the incumbent's election or appointment void;
(8) the death of the person elected or appointed to fill a vacancy, or for a full term, before the person qualifies, or before the time when by law the person should enter upon the duties of the office, in which case the vacancy shall be deemed to take place at the time when the term of office would have begun had the person lived.

Minn. Stat. § 351.02. Section 351.02 does not have a general catch-all provision in addition to the eight specifically enumerated instances of a "vacancy."

Johnson's decision to decline to "accept [his] seat in the Minnesota House of Representatives" and "to resign from the Office of State Representative effective immediately and irrevocably" does not fall within any of these eight instances. For the reasons already discussed, the letter was not a "resignation" under Minn. Stat. §§ 351.01 or 351.02(2). Resignations under chapter 351 apply only to an "*incumbent.*" Once again, on December 27, 2024, Johnson held no office from which he could resign for purposes of section 351.02(2). Nor do the State Respondents argue that Johnson's letter or his purported "abandonment" fall within any of the seven other enumerated events giving rise

17

to a "vacancy" under section 351.02.  Thus, even if, as the State Respondents argue, Minn. Stat. § 351.055 could be interpreted to permit the Governor to issue a writ of special election upon "a future vacancy becom[ing] certain to occur," there is no basis under which Johnson's letter gave rise to a future "vacancy" as that term is used in chapter 351, that would have permitted the writ's issuance on December 27, 2024, notwithstanding the timing requirements in Minn. Stat. § 204D.19, subd. 4.[7]

The writ was instead required to issue, based on the successful election contest, under Minn. Stat. § 204D.19, subd. 4.  And under the timing requirements in Minn. Stat. § 204D.19, subd. 4, the writ issued on December 27, 2024, was issued prematurely.

*     *     *

We understand and appreciate the desire to hold a special election as soon as possible, especially to ensure that the residents of House District 40B are represented in the Minnesota House of Representatives.  And considerable resources have already been expended for the special election set by the December 27, 2024 writ.  But the process under which such a writ of special election issues under the governing statutes must be faithfully followed.  Minnesota Statutes section 204D.19, subd. 4, controls the issuance of a writ of special election here.  Under Minn. Stat. § 204D.19, subd. 4, the writ of special election

---

[7]    We thus need not and do not decide today whether there are circumstances in which section 351.055 permits the Governor to issue a writ of special election earlier than would otherwise be permitted by section 204D.19 on its own, as the State Respondents maintain.

18

for House District 40B was issued prematurely and must be quashed, and the special election scheduled for January 28, 2025, canceled.[8]

## CONCLUSION

For the foregoing reasons, we grant the petition.

Petition granted.

PROCACCINI, J., took no part in the consideration or decision of this case.

---

[8]    Because the writ of special election issued on December 27, 2024, must be quashed as premature, we have no need to address petitioners' argument that the writ issued on that date violated the notice requirements in Minn. Stat. § 204D.22 and must be quashed on that alternative basis.