STATE OF MINNESOTA

IN SUPREME COURT

A23-0902

Court of Appeals                                                    Hudson, C.J.
                                                      Took no part, Gaïtas, J.
State of Minnesota,

                    Respondent,

vs.                                                          Filed:  June 4, 2025
                                                      Office of Appellate Courts
Samuel Alejondro Torrez,

                    Appellant.

———————————————

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Gregory A. Widseth, Polk County Attorney, Scott A. Buhler, First Assistant Polk County
Attorney, Crookston, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant
Public Defender, Saint Paul, Minnesota, for appellant.

———————————————

S Y L L A B U S

When a defendant is charged with refusing a blood or urine test required by a search

warrant in violation of Minnesota Statutes section 169A.20, subdivision 2(2) (2024), the

State is not required to prove that the arresting officer had probable cause to believe the

defendant was driving, operating, or in physical control of a motor vehicle while impaired.

Affirmed.

HUDSON, Chief Justice.

This case concerns whether the district court failed to instruct the jury on all elements of the charge of refusal to submit to a chemical test of blood or urine as required by a search warrant under Minnesota Statutes section 169A.20, subdivision 2(2) (2024). Appellant Samuel Alejondro Torrez was pulled over and arrested for driving while impaired, after which law enforcement secured a search warrant to test Torrez's blood or urine. Torrez refused the test. Before trial on the test refusal count, Torrez asked the district court to instruct the jury that one of the elements the Respondent State of Minnesota must prove is that the arresting officer had probable cause to believe Torrez was driving, operating, or in physical control of a motor vehicle while impaired. The district court did not give the requested instruction. A jury found Torrez guilty of first-degree test refusal. The court of appeals affirmed Torrez's conviction.

We hold that the plain language of section 169A.20, subdivision 2(2)—for refusal to submit to a chemical test "of the person's blood or urine as required by a search warrant"—does not require the State to prove that the arresting officer had probable cause to believe the defendant was driving, operating, or in physical control of a motor vehicle while impaired. As a result, we affirm the decision of the court of appeals.

**FACTS**

Torrez was arrested in Crookston on July 14, 2020, for driving while under the influence of a controlled substance and driving after license cancellation. That evening, Sergeant Dacian Bienek from the Crookston Police Department received a call of a "rolling

1

domestic" reporting that a man in a Chevy Silverado truck had hit his female passenger. Bienek identified Torrez's truck as matching the description of the suspect's vehicle and pulled him over. When he walked up to the driver's-side window, Bienek saw that Torrez was shirtless, sweating profusely, and had twitchy and jerky movements, which led Bienek to believe that Torrez was "under the influence of a controlled substance, a stimulant." With Torrez in the truck was a woman, who denied that Torrez had hit her or that they had been fighting.

Detective Ryan Brekken, who arrived at the scene shortly after Bienek, directed Torrez to exit the vehicle and noted that Torrez was moving rapidly, his pupils were dilated, and that he was extremely sweaty, grinding his teeth, and having difficulty keeping track of the conversation. Brekken administered standardized field sobriety tests to Torrez, the results of which indicated that Torrez was under the influence of a controlled substance. Brekken also confirmed that Torrez was driving without a valid license. Bienek and Brekken placed Torrez under arrest for driving while impaired.

Brekken applied for, and a judge issued, a search warrant for a blood or urine sample from Torrez that same night. Upon arrival at the police station, Brekken showed Torrez the warrant, asked him whether he consented to providing a sample, and informed him that refusal was a separate crime. Torrez refused to provide a sample and acknowledged that he knew that refusal was a crime.

The State charged Torrez with one count of first-degree test refusal (blood or urine), *see* Minn. Stat. § 169A.20, subd. 2(2), and one count of gross misdemeanor driving after

2

cancellation as inimical to public safety, *see* Minn. Stat. § 171.24, subd. 5 (2024).[1]  Torrez entered pleas of not guilty.

Before trial, the parties addressed the jury instructions for the test refusal count. Section 169A.20, subdivision 2(2), states that "[i]t is a crime for any person to refuse to submit to a chemical test . . . of the person's blood or urine as required by a search warrant under sections 171.177 and 626.04 to 626.18."  The State argued that the plain language of the statute Torrez was charged with violating, Minn. Stat. § 169A.20, subd. 2(2), does not require the State to prove beyond a reasonable doubt that the officer had probable cause to believe that Torrez drove while under the influence of a controlled substance.  Torrez disagreed and proposed his own instruction on a probable cause element.[2]

---

[1]      Torrez's test refusal charge was enhanced to first-degree test refusal, a felony, because he committed the offense "within ten years of the first of three or more qualified prior impaired driving incidents."  Minn. Stat. § 169A.24, subd. 1(1) (2024).

[2]      Torrez's proposed jury instruction read as follows:

> First, a peace officer had probable cause to believe that the defendant drove, operated, or was in physical control of a motor vehicle while under the influence of a controlled substance.  In order to find that the officer had "probable cause," you must first look at the totality of the circumstances leading to the arrest, based upon the objective facts and circumstances testified to by the arresting officer, as well as the officer's training and experience.  If you find those circumstances would lead a reasonable officer to have an honest and strong suspicion that the defendant was driving, operating, or in physical control of a motor vehicle while under the influence of a controlled substance, then the arresting officer had probable cause.

It was based on the model jury instruction.  *See* 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instructions Guide, Criminal*, CRIMJIG 29.22 (6th ed. Supp. 2022–2023).

The district court found that probable cause already existed by virtue of the issuance of the search warrant and rejected Torrez's requested jury instruction. When the district court instructed the jury on the test refusal charge, it did not include a probable cause element.

Following a trial, the jury found Torrez guilty on both counts. The court sentenced Torrez to 72 months on the test refusal conviction and 365 days on the driving-after-cancellation conviction, to be served concurrently.

The court of appeals affirmed Torrez's test refusal conviction. *State v. Torrez*, 8 N.W.3d 674, 680 (Minn. App. 2024).[3] The court concluded that "because the district court had already found that probable cause supported the issuance of the search warrant, it did not abuse its discretion when it decided not to submit the issue of probable cause to the jury." *Id.* at 678. It found that "the state does not have to prove beyond a reasonable doubt that law enforcement had probable cause to believe the defendant was driving while impaired if there was a valid search warrant for a blood or urine test supported by probable cause." *Id.*

Torrez filed a petition for review, which we granted on the sole issue of whether Minnesota Statutes section 169A.20, subdivision 2(2), requires the State to prove beyond

---

[3]    The court of appeals also considered sua sponte whether Torrez's sentence for driving after cancellation was lawful. *Torrez*, 8 N.W.3d at 680. The district court imposed a 365-day sentence on the gross misdemeanor conviction, but a statute enacted in 2023 and retroactively applicable to Torrez's sentence requires gross misdemeanor sentences to be 364 days or fewer. *Id.* (citing Minn. Stat. § 609.0342 (2024)). The court of appeals reversed this sentence and remanded for resentencing in accordance with the statute. *Id.* Neither the State nor Torrez appealed this holding by the court of appeals.

a reasonable doubt that law enforcement had probable cause to believe the defendant was driving while impaired.

## ANALYSIS

We review "jury instructions as a whole to determine whether they correctly state the law." *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015). Failure to instruct the jury on all elements of a crime "[does] not fairly and adequately explain the law of the case and [is] error." *State v. Kuhnau*, 622 N.W.2d 552, 558 (Minn. 2001).

The issue presented is whether the district court failed to instruct the jury on all the elements of Torrez's test refusal charge. To resolve this issue, we must determine whether Minnesota Statutes section 169A.20, subdivision 2(2) ("Clause 2(2)"), under which the State charged Torrez, requires the State to prove that the arresting officer had probable cause to believe the defendant was driving, operating, or in physical control of a motor vehicle while impaired.[4] This is a matter of statutory interpretation, which we review de novo. *Schwanke v. Minn. Dep't of Admin.*, 851 N.W.2d 591, 593 (Minn. 2014).

"The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *State v. Moore*, 10 N.W.3d 676, 680 (Minn. 2024); *see also* Minn. Stat. § 645.16 (2024). "To do so, we must first determine whether the statute is ambiguous on

---

[4] There are several ways in which a person can drive, operate, or be in physical control of a motor vehicle while impaired, including when such person is "under the influence of alcohol," "under the influence of a controlled substance," or when a person's alcohol concentration exceeds the legal limit. Minn. Stat. § 169A.20, subd. 1 (2024). We will thus refer to the probable cause requirement using the more general phrase "while impaired," rather than the more specific "while under the influence of a controlled substance" language contained in Torrez's requested jury instruction.

5

its face." *Fordyce v. State*, 994 N.W.2d 893, 897 (Minn. 2023) (citation omitted) (internal quotation marks omitted). If a statute is subject to only one reasonable interpretation, it is not ambiguous, and we apply its plain meaning. *State v. Hayes*, 826 N.W.2d 799, 804 (Minn. 2013).

The parties present competing interpretations based on various statutes. The State focuses exclusively on the language of Clause 2(2) itself and argues that its plain language does not require a showing of probable cause. Clause 2(2) reads simply that "[i]t is a crime for any person to refuse to submit to a chemical test . . . of the person's blood or urine as required by a search warrant under sections 171.177 and 626.04 to 626.18." Minn. Stat. § 169A.20, subd. 2(2). It is undisputed that Clause 2(2) does not explicitly reference probable cause or state that an officer must have probable cause to believe a person committed any offense before being asked to take a blood or urine test pursuant to a search warrant. As a result, we agree that that Clause 2(2) can be reasonably interpreted as not containing a probable cause element.

Torrez's competing interpretation of Clause 2(2) relies on a different statute, Minnesota Statutes section 169A.51, subdivision 3(a) (2024), and Torrez's contention that the plain language of that statute establishes a probable cause element for the refusal of all blood and urine tests. Section 169A.51, subdivision 3(a), provides: "Notwithstanding any contrary provisions in sections 169A.51 to 169A.53, a blood or urine test may be conducted only pursuant to a search warrant or a judicially recognized exception to the search warrant requirement. In addition, blood and urine tests may be conducted only as provided in sections 169A.51 to 169A.53 and 171.177." Torrez argues that the "in addition" sentence

6

in section 169A.51, subdivision 3(a), applies to "all blood and urine tests," including the tests referenced in Clause 2(2). If that were to be the case, he contends that section 169A.51, subdivision 1—which has already been determined to require a probable cause element—would apply to Clause 2(2)'s chemical tests.

In making this argument, Torrez argues that the history of portions of the impaired driving code is instructive. Both Clause 2(2) and section 169A.51, subdivision 3(a)—the statute upon which Torrez relies—were enacted during the 2017 Legislative session. *See* Act of May 23, 2017, ch. 83, art. 2, § 2, 2017 Minn. Laws 351, 355 (codified at Minn. Stat. § 169A.20, subd. 2(2)); *id.*, ch. 83, art. 2, § 4, 2017 Minn. Laws at 356 (codified at Minn. Stat. § 169A.51, subd. 3(a)). These amendments arose from the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. 438 (2016), which concerned, in part, the constitutional implications of criminal test refusal laws. The Supreme Court held that a warrantless breath test, but not a blood test, could be conducted as a search incident to an arrest for drunk driving.[5] *Id.* at 476. Following *Birchfield*, we held that "test refusal by a suspected impaired driver may be criminalized consistent with the Fourth Amendment only when there is a warrant for the test or a warrant exception applies." *Johnson v. State*, 956 N.W.2d 618, 621 (Minn. 2021) (summarizing the *Birchfield* rule).

Before *Birchfield*, there was only one subdivision in section 169A.20 addressing criminal test refusal, and it did not distinguish between breath, blood, or urine tests. *See*

---

[5] We later held that the police may not conduct a warrantless urine test of a suspected drunk driver as a search incident to arrest. *State v. Thompson*, 886 N.W.2d 224, 233 (Minn. 2016).

Minn. Stat. § 169A.20, subd. 2 (2016) ("It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)."). Following *Birchfield*, the Legislature split the relevant test refusal statute, section 169A.20, subdivision 2, into two clauses. *See* Act of May 23, 2017, ch. 83, art. 2, § 2, 2017 Minn. Laws 351, 355 (codified at Minn. Stat. § 169A.20, subd. 2 (2024)).

Newly created subdivision 2(1) ("Clause 2(1)") pertains to breath tests, and like the prior version of the test refusal statute, it directly references Minnesota Statutes sections 169A.51 and 169A.52 (2024). *See* Minn. Stat. § 169A.20, subd. 2(1) ("It is a crime for any person to refuse to submit to a chemical test . . . of the person's breath under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)."). Minnesota Statutes section 169A.51, subdivision 1(b), in turn states that a test of a suspected impaired driver may be conducted "when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired)." The plain language of Clause 2(1)—by referencing section 169A.51—clearly requires the State to prove probable cause beyond a reasonable doubt in *breath*-test refusal cases. We continue to hold that our pre-amendment probable cause analysis applies to Clause 2(1). *See State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011) (stating that the test refusal statute "incorporates the requirement from section 169A.51 that an officer may request that a person submit to a chemical test when the officer 'has probable cause to believe the person

8

was driving, operating, or in physical control of a motor vehicle' while impaired" (quoting Minn. Stat. § 169A.51, subd. 1(b) (2012))).

Torrez argues that we should read the newly created Clause 2(2) pertaining to blood or urine tests as incorporating the same probable cause element explicitly referenced in Clause 2(1). According to Torrez, this is compelled by the language from subdivision 3(a) of section 169A.51, providing: "In addition, *blood and urine tests may be conducted only as provided in sections 169A.51 to 169A.53 and 171.177.*" Act of May 23, 2017, ch. 83, art. 2, § 4, 2017 Minn. Laws 351, 356 (codified at Minn. Stat. § 169A.51, subd. 3(a)) (emphasis added). Torrez argues that this sentence in section 169A.51, subdivision 3(a), applies to "all blood and urine tests," including the tests referenced in Clause 2(2). He thus contends that Clause 2(2)'s chemical tests must be conducted as provided in section 169A.51, subdivision 1, which has already been determined to require a probable cause element.

Torrez's argument is predicated on the fact that both section 169A.51, subdivision 3(a), and Clause 2(2) were enacted in 2017, and on our decision in *State v. Beganovic*, 991 N.W.2d 638 (Minn. 2023). We said in *Beganovic* that "when two statutes were enacted at the same time and for the same purpose, we *may* properly consider both in our effort to understand the plain language of the statute—whether more than one reasonable interpretation of the language exists." *Id.* at 645 (emphasis added). Torrez argues that because the "in addition" sentence in section 169A.51, subdivision 3(a), was enacted at the same time and for the same purpose as the blood or urine test refusal statute in Clause 2(2), both statutes should be read in conjunction with each other.

9

We conclude that even when considering both section 169A.51, subdivision 3(a), and Clause 2(2), Torrez's proposed interpretation is not reasonable. Torrez's argument does more work than the plain text of Clause 2(2) requires. *See State v. Fugalli*, 967 N.W.2d 74, 78 (Minn. 2021) ("No additional grammatical parsing or lexicographic analysis is necessary to understand what the language plainly says . . . ."). The Legislature knew how to add the probable cause requirement to a criminal test refusal statute, as evidenced by Clause 2(1)'s explicit reference to section 169A.51. *See Gen. Mills, Inc. v. Comm'r of Revenue*, 931 N.W.2d 791, 800 (Minn. 2019) ("When the Legislature uses limiting or modifying language in one part of a statute, but omits it in another, we regard that omission as intentional and will not add those same words of limitation or modification to parts of the statute where they were not used.") The Legislature chose not to do so in Clause 2(2).

This reading is supported by our analysis in *State v. Schwartz*, 957 N.W.2d 414 (Minn. 2021). In *Schwartz*, we looked to other subdivisions within a statute to determine whether the subdivision under which the defendant was charged created an express knowledge requirement. *Id.* at 419. We noted that the charging subdivision failed to include a mens rea requirement, while another subdivision of the same statute used the modifying language "knows or has reason to know." *Id.* (citation omitted) (internal quotation marks omitted). Thus we "interpret[ed] the omission of such language in [the charging subdivision] as equally intentional and decline[d] to add the same words where the Legislature did not." *Id.* Here, Clause 2(1) includes an express reference to section 169A.51, which carries with it a probable cause requirement. Clause 2(2), which refers to other statutes, notably does not reference section 169A.51. Where the Legislature

10

includes "different . . . requirements . . . *within the same subdivision of the same statute*," it becomes even clearer that we cannot read in a reference that the Legislature chose purposefully not to include. *Schwartz*, 957 N.W.2d at 420.

Similarly, the "in addition" language of section 169A.51, subdivision 3(a)—which Torrez argues we must look to—could have made direct reference to the blood and urine test refusals criminalized in Clause 2(2), but it does not. We stated in *Beganovic* that "the Legislature has all of those provisions [enacted at the same time] before it as it considers the legislative solution to the particular problem, including the language used to set forth that solution." 991 N.W.2d at 645. The Legislature could have crafted an explicit probable cause requirement out of the provisions that it wrote in 2017, but it decided not to do so.

Torrez advances several potential consequences that he argues should caution us against adopting the State's interpretation. But because we agree with the State that Clause 2(2) is plain and unambiguous, we need not address these arguments. *See Rohmiller v. Hart*, 811 N.W.2d 585, 589 (Minn. 2012) (stating that only "[w]hen the language is unclear or ambiguous, however, will [we] go beyond the plain language of the statute to determine the intent of the legislature"); Minn. Stat. § 645.16(6) ("When the words of a law are not explicit, the intention of the legislature may be ascertained by considering . . . the consequences of a particular interpretation[.]").

Torrez also argues that the State's reading renders section 169A.51, subdivision 3(a), superfluous. Specifically, he argues that the language that "blood and urine tests may be conducted only as provided in section[] 169A.51" would be read out of the statute if that commandment did not apply to the tests covered under Clause 2(2). Minn.

11

Stat. § 169A.51, subd. 3(a). It is true that "[w]henever possible, '[e]very law shall be construed . . . to give effect to all its provisions.' " *State v. Randolph*, 800 N.W.2d 150, 154 (Minn. 2011) (second alteration in original) (quoting Minn. Stat. § 645.16). But giving effect to section 169A.51, subdivision 3(a), does not compel Torrez's construction of Clause 2(2), and we agree with the court of appeals' analysis on this issue. *See Torrez*, 8 N.W.3d at 679. Section 169A.51 falls under the list of statutes entitled "Administrative Provisions," while section 169A.20 is under "Criminal Provisions." Section 169A.51, subdivision 3(a), prescribes the treatment of chemical tests for intoxication as used for the purposes of administrative, civil license revocations. The language is thus not superfluous as it pertains to civil license revocations.

We therefore hold that when a defendant is charged with refusing a blood or urine test required by a search warrant in violation of Minnesota Statutes section 169A.20, subdivision 2(2), the State is not required to prove that the arresting officer had probable cause to believe the defendant was driving, operating, or in physical control of a motor vehicle while impaired. As a result, the district court did not abuse its discretion in deciding not to submit Torrez's requested probable cause instruction to the jury.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

GAÏTAS, J., took no part in the consideration or decision of this case.

12